**2015-1917**

# United States Court of Appeals
# for the Federal Circuit

NETFLIX, INC.,

*Plaintiff/Counterclaim Defendant – Appellee,*

v.

ROVI CORPORATION, ROVI TECHNOLOGIES CORPORATION,
ROVI GUIDES, INC., fka Gemstar-TV Guide International, Inc.,
UNITED VIDEO PROPERTIES, INC.,

*Defendants/Counterclaimants – Appellants,*

APTIV DIGITAL, INC., STARSIGHT TELECAST, INC.,

*Counterclaimants – Appellants.*

*Appeal from the United States District Court for the Northern District of
California in Case No. 11-CV-06591, Judge Phyllis J. Hamilton*

**BRIEF OF *AMICI CURIAE* BROADBAND iTV, INC., DOUBLE ROCK
CORPORATION, ISLAND INTELLECTUAL PROPERTY, LLC, ACCESS
CONTROL ADVANTAGE, INC., AND FAIRWAY FINANCIAL U.S., INC.
IN SUPPORT OF APPELLANTS**

CHARLES R. MACEDO
SANDRA A. HUDAK
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue, 21st Floor
New York, New York 10016
(212) 336-8000

*Counsel for Amici Curiae
Broadband iTV, Inc., Double Rock
Corporation, Island Intellectual
Property, LLC, Access Control
Advantage, Inc., and Fairway
Financial U.S., Inc.*

## CERTIFICATE OF INTEREST

Counsel for amici curiae state the following:

1.      The full names of every party or amicus represented by me are:

Broadband iTV, Inc., Double Rock Corporation, Island Intellectual Property, LLC, Access Control Advantage, Inc., and Fairway Financial U.S., Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for any of the parties or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Charles R. Macedo and Sandra A. Hudak of Amster, Rothstein & Ebenstein LLP.

Dated: December 18, 2015     By: */s/ Charles R. Macedo*_____
                                    Charles R. Macedo
                                    AMSTER, ROTHSTEIN & EBENSTEIN LLP

                                    *Counsel for Amicus Curiae Broadband iTV,*
                                    *Inc., Double Rock Corporation, Island*
                                    *Intellectual Property, LLC, Access Control*
                                    *Advantage, Inc., and Fairway Financial U.S.,*
                                    *Inc.*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF INTEREST .................................................................1

SUMMARY OF THE ARGUMENT .......................................................3

ARGUMENT ........................................................................................5

I.    *Netflix* Erred in Applying Step One by Improperly Defining the Alleged "Abstract Ideas" ..................................................................................7

    A.    *Netflix* Erred in Misidentifying "Novel" Methods of Organizing Human Activity as the Alleged "Abstract Ideas" ...............................9

    B.    *Netflix* Erred in Identifying Overly-Detailed Abstractions of the Challenged Claims as "Abstract Ideas," Thus Erroneously Stripping All Meaning from the Two-Part *Alice* Framework .............................14

II.   *Netflix* Also Improperly Applied Step Two of the *Alice* Framework ...........20

    A.    *Netflix* Improperly Ignored "Inventive" Aspects of the Claimed Invention that Are "Non-Routine" or "Unconventional" Merely Because a Generic Computer Is Used ..................................................21

    B.    *Netflix* Improperly Strips Away Elements of the Claims to Erroneously Conclude that the Claims Could Be Performed by Hand24

    C.    *Netflix* Improperly Fails to Consider Concrete Technological Limitations......................................................................................27

CONCLUSION ....................................................................................30

CERTIFICATE OF SERVICE ..............................................................31

CERTIFICATE OF COMPLIANCE.......................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alice Corp. v. CLS Bank, Int'l*,
    134 S. Ct. 2347 (2014)................................................................*passim*

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013)....................................................................6, 11

*Bilski v. Kappos*,
    561 U.S. 593 (2010)....................................................................*passim*

*Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*,
    No. 1:14-cv-00169,
    2015 U.S. Dist. LEXIS 131729 (D. Haw. Sept. 29, 2015)........................*passim*

*Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*,
    No. 1:15-cv-00131,
    2015 U.S. Dist. LEXIS 131726 (D. Haw. Sept. 29, 2015)........................*passim*

*Cal. Inst. of Tech. v. Hughes Communs., Inc.*,
    59 F. Supp. 3d 974 (C.D. Cal. 2014)......................................18–19, 28

*Card Verification Solutions, LLC v. Citigroup Inc.*,
    No. 1:13-cv-06339,
    2014 U.S. Dist. LEXIS 137577 (N.D. Ill. Sept. 29, 2014)....................18–19, 28

*Chamberlain Grp., Inc. v. Linear LLC*,
    No. 1:14-cv-05197,
    2015 U.S. Dist. LEXIS 87876 (N.D. Ill. July 7, 2015) .....................................28

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ................................................*passim*

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980).............................................................................6

*Diamond v. Diehr*
    450 U.S. 175 (1981)....................................................................*passim*

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
  333 U.S. 127 (1948)......................................................................................11

*Global Tel*Link Corp. v. Securus Techs. Inc.*,
  No. PGR2015-00013, Paper 18 (P.T.A.B. Dec. 8, 2015) ...................................28

*Gottschalk v. Benson*
  409 U.S. 63 (1972).................................................................................7, 22, 29

*Hawaiian Telcom, Inc. v. Broadband iTV, Inc.*,
  No. CBM2014-00189, Paper 11 (P.T.A.B. Apr. 1, 2015)...................................18

*Hulu, LLC v. iMTX Strategic, LLC*,
  No. CBM2015-00147, Paper 14 (P.T.A.B. Nov. 30, 2015) .........................27–28

*Intellectual Ventures I LLC v. Symantec Corp.*,
  Nos. 1:10-cv-01067, 1:12-cv-01581,
  2015 U.S. Dist. LEXIS 52527 (D. Del. Apr. 22, 2015)....................................28

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .......................................................................24

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012)..............................................................................*passim*

*Netflix, Inc. v. Rovi Corp.*,
  No. 4:11-cv-06591 (N.D. Cal. Jul. 15, 2015) (Appx001–36) ....................*passim*

*Parker v. Flook*,
  437 U.S. 584 (1978)................................................................................7, 26, 28

*SiRF Tech., Inc. v. ITC*,
  601 F.3d 1319 (Fed. Cir. 2010) .......................................................................29

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) .........................................................................12

*Unified Patents, Inc. v. Broadband iTV, Inc.*,
  No. IPR2014-01222, Paper 8 (P.T.A.B. Jan. 5, 2015) ......................................18

iv

*Versata Software, Inc. v. NetBrain Techs., Inc.*,
    Nos. 1:13-cv-00676, -00678,
    2015 U.S. Dist. LEXIS 132000 (D. Del. Sept. 30, 2015)...........................4–5, 14

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)...............................................................................................26

**STATUTES**

35 U.S.C. § 101 ..................................................................................................*passim*

**STATEMENT OF INTEREST**

Amici Curiae Broadband iTV, Inc. ("BBiTV"), Double Rock Corporation ("Double Rock"), Island Intellectual Property, LLC ("IslandIP"), Access Control Advantage, Inc. ("ACA"), and Fairway Financial U.S., Inc. ("Fairway") (collectively "Amici") respectfully submit this *amici curiae* brief in support of Appellants Aptiv Digital, Inc., Rovi Corporation, Rovi Guides, Inc., Rovi Technologies Corporation, StarSight Telecast, Inc. and United Video Properties, Inc. (collectively, "Rovi").

BBiTV, Double Rock, IslandIP, and ACA are all former practicing entities and patent holders that built, developed, and commercialized computer-implemented technology and patented the results of their research and development that solved real world problems faced by their respective businesses. BBiTV practiced in the field of delivering video-on-demand content via cable television communication services, and Double Rock, IslandIP, and ACA practiced in the field of providing back-office computer services to the financial services sector. While the portions of their business that commercialized the results of their patented technologies have since been disbanded, sold and/or licensed, BBiTV, Double Rock, IslandIP, and ACA continue to maintain a substantial interest and investment in the fruits of their research and development in the form of their respective patent portfolios.

Fairway is a technology start-up in the financial services industry that has developed a next generation system for electronically developing a transparent book-of-business. Fairway's affiliate owns over sixty patents throughout fifty-six countries and many more pending applications. Strong intellectual property laws are necessary for Fairway to compete against larger organizations who will follow into the marketplace. Thus, Fairway also maintains a substantial interest in fostering a strong patent system that protects innovations in computer-implemented inventions.

Confusion among district courts resulting in overzealous application of the law on patent-eligibility under 35 U.S.C. § 101 is causing harm to patent owners, inventors, and the marketplace. The errors committed by the district court in this case have been repeated by other district courts and risk infecting the law of patent-eligibility. Thus, Amici each believe it is important for this Court to reverse the district court's decision and clarify the law with respect to patent-eligibility of computer-implemented inventions under 35 U.S.C. § 101.[1]

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a), all parties have consented to the filing of this *amici curiae* brief. Rovi consented to the filing of this *amici curiae* brief on November 25, 2015 and Netflix, Inc. consented to the filing of this *amici curiae* brief on November 30, 2015. Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than Amici or their counsel made a monetary contribution to fund the preparation or submission of this brief.

## SUMMARY OF THE ARGUMENT

Amici submit this brief to address a growing and alarming trend in the misapplication of the law on patent-eligibility since *Alice Corp. v. CLS Bank, Int'l*, 134 S. Ct. 2347 (2014). The present appeal concerns one of many district court decisions overextending the Supreme Court's precedent to find clearly tangible and non-abstract inventions invalid under 35 U.S.C. § 101. Even when just looking at decisions issued in the field of video-on-demand, district courts have been invalidating countless patents directed to specific, novel, and concrete improvements in the delivery of video-on-demand content, which use specific types of equipment and include inventive concepts not otherwise present in the prior art.

The decision below ("*Netflix*"[2]) has misapplied *Alice* in several key ways.

In the context of step one of an *Alice* framework, *Netflix* erred in determining the alleged "abstract ideas." Contrary to the Supreme Court's warning in *Alice* that the judicial exclusion for "abstract ideas" should be carefully applied "lest it swallow all of patent law," *Netflix* failed to adequately heed this warning in its identifications of the alleged "abstract ideas." Like many lower court decisions, *Netflix* misidentified alleged "abstract ideas" that were neither the equivalent of traditional "preexisting, fundamental truths," such as Einstein's $E=mc^2$ or

---

[2] *Netflix, Inc. v. Rovi Corp.*, No. 4:11-cv-06591 (N.D. Cal. Jul. 15, 2015) (Appx001–36).

3

Newton's law of gravity, nor "fundamental economic practice[s] ***long prevalent*** in our system of commerce,"[3] such as *Bilski*'s hedging risk or *Alice*'s intermediated settlement. Thus, *Netflix* erred in defining the alleged abstract ideas by: (1) improperly including "novel" business practices or methods of organizing human activities; and (2) including detail well beyond the level of detail used in *Alice* or *Bilski*.

    *Netflix* also erred in its application of step two of the *Alice* framework. *Netflix* erred by: (1) ignoring computer-implemented steps merely because a computer was involved; (2) ignoring other concrete technological implementations in the claim; and (3) finding the claim could be performed in the human mind or by hand by improperly ignoring significant aspects of the claim.

    Collectively, these errors were not only made in *Netflix*, but are being made in other decisions relying upon this flawed analysis, including *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, No. 1:14-cv-00169, 2015 U.S. Dist. LEXIS 131729 (D. Haw. Sept. 29, 2015), *appeal docketed*, No. 16-1082 (Fed. Cir. Oct. 16, 2015) ("*BBiTV-HT*"); *Broadband iTV, Inc. v. Oceanic Time Warner Cable, LLC*, No. 1:15-cv-00131, 2015 U.S. Dist. LEXIS 131726 (D. Haw. Sept. 29, 2015), *appeal docketed*, No. 16-1082 (Fed. Cir. Oct. 16, 2015) ("*BBiTV-TWC*," collectively with *BBiTV-HT*, "*BBiTV*"); *Versata Software, Inc. v. NetBrain Techs., Inc.*, Nos. 1:13-

---

[3] All emphasis is added, unless otherwise indicated.

cv-00676, -00678, 2015 U.S. Dist. LEXIS 132000 (D. Del. Sept. 30, 2015) (report

and recommendation), *stipulation of dismissal with prejudice* (Oct. 28, 2015).

Amici urge this Court to reverse *Netflix*, and provide some much needed

clarity regarding what is, in fact, patent-eligible after *Alice*.

## ARGUMENT

*Alice* summarized the state of patent-eligibility law under 35 U.S.C. § 101 in

the context of computer-implemented inventions.  It reviewed the Supreme Court's

prior precedent, describing how each of its decisions that addressed the judicial

exception for abstract ideas had observed a very careful balance between concerns

of preemption and concerns of construing this exclusionary principle too broadly.

*Alice* itself did not alter that balance.  While it clarified that "the mere

recitation of a generic computer cannot transform a patent-ineligible abstract idea

into a patent-eligible invention," it also reiterated that "an invention is not rendered

ineligible for patent simply because it involves an abstract concept."  *Alice*, 134 S.

Ct. at 2354, 2358.  Likewise, an invention is not rendered patent-ineligible simply

because it involves a computer.  *See id.* at 2357–58; *Diamond v. Diehr*, 450 U.S.

175, 187 (1981).  The framework set forth in *Mayo*, and adopted for abstract ideas

in *Alice*, is intended to assist in "distinguishing patents that claim laws of nature,

natural phenomena, and abstract ideas from those that claim patent-eligible

applications of those concepts."  *Alice*, 134 S. Ct. at 2355.  This framework is to be

applied cautiously, "*lest it swallow all of patent law*." *Id.* at 2354; *see also Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) ("patent protection strikes a delicate balance between creating 'incentives that lead to creation, invention, and discovery' and 'imped[ing] the flow of information that might permit, indeed spur, invention.'") (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1305 (2012)); *Mayo*, 132 S. Ct. at 1293 ("too broad an interpretation of this exclusionary principle could eviscerate patent law.").

Unfortunately, *Netflix* erred by indiscriminately applying this framework to find what seems like any and all computer-implemented inventions patent-ineligible, regardless of their inventiveness or their specific limitations. This is not the result that *Alice* (or Congress) intended or dictates. *See Alice*, 134 S. Ct. at 2354 ("in applying the §101 exception, we must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more") (quoting *Mayo*, 132 S. Ct. 1303) (internal modifications omitted); *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) ("'Congress plainly contemplated that the patent laws would be given wide scope.'") (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)).

I.  *Netflix* **Erred in Applying Step One by Improperly Defining the Alleged "Abstract Ideas"**

A fundamental problem evidenced by the decision below, and permeating through many lower court decisions, is a failure to appreciate what exactly constitutes an "abstract idea."  Specifically, these decisions have labeled as "abstract ideas" inventive concepts that go far beyond the bounds of that category as previously envisioned or dictated by the Supreme Court.

Indeed, in reviewing the history of patent-eligibility, *Alice* recognized that, prior to *Bilski*, the "abstract idea" exception had only been applied to "mathematical formulas."  *Alice*, 134 S. Ct. at 2356.

For example, the patent claims in *Gottschalk v. Benson* involved an algorithm for converting binary-coded decimal numerals into pure binary code, and were patent-ineligible as they "would wholly pre-empt the ***mathematical formula*** and in practical effect would be a patent on ***the algorithm*** itself."  *Benson*, 409 U.S. 63, 72 (1972); *see also Alice*, 134 S. Ct. at 2355; *Bilski*, 561 U.S. at 610.

Likewise, in *Parker v. Flook*, the claimed "procedure for monitoring the conditions during the catalytic conversion process" was not patentable as the "application's only innovation was reliance on ***a mathematical algorithm***."  *Flook*, 437 U.S. 584, 594–95 (1978); *see also Alice*, 134 S. Ct. at 2355; *Bilski*, 561 U.S. at 610.

By contrast, in *Diehr*, a computer-implemented process for curing rubber was patent-eligible because it was not "an attempt to patent ***a mathematical formula***" since the additional steps of the claimed method transformed the process into an inventive application of the formula. *Diehr*, 450 U.S. at 191–93; *see also Alice*, 134 S. Ct. at 2358; *Bilski*, 561 U.S. at 611.

Thus, prior to *Bilski*, the three judicial exceptions—laws of nature, natural phenomena, and abstract ideas (i.e., mathematical formulas)—were preexisting fundamental truths that exist in principle apart from any human action. *See Bilski*, 561 U.S. at 619–20 (Stevens, J., concurring); *cf. Alice*, 134 S. Ct. at 2356. In essence, these fundamental truths were treated the same.

However, *Bilski* did not rely on the fact that the concept of "hedging risk" could be reduced to a "mathematical formula" in classifying it as an abstract idea. Instead, *Bilski* also found the concept of "hedging risk" to be an "abstract idea" because it was "a ***fundamental*** economic practice ***long prevalent*** in our system of commerce." *Bilski*, 561 U.S. at 611.

*Alice* explored the bounds of an abstract idea even further. It recognized that "hedging risk" ***could*** have been found an abstract idea in *Bilski* on the alternative basis that hedging risk could be reduced to a "mathematical formula," but instead expressly relied on the fact that hedging risk was an "abstract idea" because it was "a ***fundamental*** economic practice." *See Alice*, 134 S. Ct. at 2356–57. It did so

8

because the abstract idea in *Alice*—"intermediated settlement"—was easily identifiable as a similar "***fundamental*** economic practice ***long prevalent in our system of commerce***." *Id.* at 2356. *Alice* supported the "fundamental," "long prevalent," and "longstanding" nature of the practice of intermediated settlement by, *inter alia*, citing to publications from 1896 and textbooks to demonstrate how well-known and deep-rooted an economic concept it was. *Id.*; *see also Bilski*, 561 U.S. at 611. Because intermediated settlement was so similar in kind to the "long prevalent" concept of hedging risk in *Bilski*, *Alice* stopped the analysis there, and did not feel a need to "labor to delimit the precise contours of the 'abstract ideas' category." *Id.* at 2357. Thus, the Supreme Court expressly declined to expand the "abstract ideas" category beyond mathematical formulas and "fundamental economic practice[s] long prevalent in our system of commerce."[4]

## A.    *Netflix* Erred in Misidentifying "Novel" Methods of Organizing Human Activity as the Alleged "Abstract Ideas"

While *Alice* chose not to provide any guidance on how to identify an "abstract idea," it certainly did not authorize the vast expansion of the category seen in lower court decisions over the past year. To the extent that "fundamental economic practice[s] ***long prevalent*** in our system of commerce" are judicially

---

[4] Indeed, both *Alice* and *Bilski* included minority opinions that would have eliminated business method patents completely, but these opinions were not adopted by the majority opinions. *Compare Bilski*, 561 U.S. at 609 (majority opinion), *with Alice*, 134 S. Ct. at 2360 (Sotomayor, J., concurring).

excluded from patent protection under *Alice*, "novel" business practices and other "just discovered" methods of organizing human activity are not included within that group.

As noted above, when *Alice* and *Bilski* expanded the "abstract idea" exception beyond "preexisting truths," such as mathematical formulas, the Supreme Court relied on the fact that "hedging risk" and "intermediated settlement" were "fundamental" and "***long prevalent in our system of commerce***," and even supported those findings with references. *See Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 611. Yet, *Netflix* (as well as other lower court decisions) expands the holdings in *Alice* and *Bilski* to include "just discovered" methods of organizing human activity within the category of the judicially created "abstract idea" exception. This holding goes beyond the holdings or rationale of prior Supreme Court precedent, and should be rejected.

Here, *Netflix* repeatedly held that "novel abstract ideas" allegedly related to methods of organizing human activity are "abstract ideas" nonetheless. *See, e.g.*, Appx016–17; Appx019–20; Appx027–28; Appx030–31; Appx035–36. This is error. In so holding, *Netflix* conflated the different kinds of "abstract ideas" recognized in Supreme Court jurisprudence. *Netflix* erroneously relied on the discussion in *Diehr* regarding the relationship between the novelty of the invention incorporating a mathematical formula and patent-eligibility under section 101. *See*

Appx013 (citing *Diehr*, 450 U.S. at 185, 190).  While *Diehr* did address this issue,

the Supreme Court discussed it in the context of inventions involving a

***mathematical algorithm*** (*i.e.*, a preexisting truth) like the Arrhenius equation, and

not, as here, novel methods of organizing human activity.  *Diehr* explained that:

> Einstein could not patent his celebrated law that $E=mc^2$; nor could
> Newton have patented the law of gravity.  Such discoveries are
> ***manifestations of nature*** . . . .

450 U.S. at 185, 190 (internal quotations and modifications omitted).  *Diehr*'s

reasoning was based on the fact that "manifestations of nature," such as

mathematical algorithms, ***were not truly "new"*** even if they were newly

"discovered" by man: "***a mathematical algorithm*** must be assumed to be within

the 'prior art.'"  *Id*. at 189 n.12; *see also Myriad*, 133 S. Ct. at 2116 ("[p]roducts of

nature are not created"); *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127,

132 (1948) (the patent-at-issue "was not the product of invention. There is no way

in which we could call it such unless we borrowed invention from the discovery of

the natural principle itself.").  This rationale does not apply to newly discovered

methods of organizing human activity or business practices not already known.

Significantly, the Supreme Court has never applied this reasoning to find

"novel" business practices or methods of organizing human activities to be

"abstract ideas."  Instead, as discussed above, the Supreme Court has relied on the

fact that "hedging risk" and "intermediated settlement" were "fundamental," "long

prevalent," and "longstanding" when classifying them as "abstract ideas":

> The concept of risk hedging we identified as an abstract idea in
> [*Bilski*] cannot be described as . . . a truth about the natural world ***that
> has always existed*** . . . . Instead, the Court grounded its conclusion
> that all of the claims at issue were abstract ideas in the understanding
> that risk hedging was a ***fundamental*** economic practice.

*Alice*, 134 S. Ct. at 2356–57 (internal quotations omitted); *accord DDR Holdings,

LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (the "patent's

asserted claims do not recite a mathematical algorithm. Nor do they recite a

fundamental economic or longstanding commercial practice. Although the claims

address a business challenge (retaining website visitors), it is a challenge particular

to the Internet.").

To the extent that this Court in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d

709 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015), expressed that the

novelty of the alleged abstract idea does not preclude its status as a judicially

excluded "abstract idea," Amici respectfully submit that such a position deviates

from the Supreme Court's distinction between "preexisting truths"—which cannot

be novel, only newly discovered—and "methods of organizing human activity"—

that must be "fundamental" and "long prevalent."

The alleged "abstract ideas" identified by *Netflix* fail to recognize that *Alice*

did not sanction the identification of "novel" business practices or methods of

organizing human activity as "abstract ideas."  Here, "using composite categories to define shows" was incorrectly identified as an "abstract idea" as it is neither a "manifestation of nature" nor a "fundamental," "long prevalent," or "longstanding" economic practice.  For the same reasons, "filtering search results using selectable categories"; "generating viewing recommendations"; and "bookmarking across devices" are not "abstract ideas."  Indeed, *Netflix* repeatedly acknowledged that the disclosure of the alleged "abstract ideas" it was identifying may have been novel and unconventional.  *See, e.g.*, Appx016–17; Appx019–20; Appx027–28; Appx030–31; Appx035–36.

This error is illustrated, for example, by *Netflix*'s statement that "the issue of whether combination categories were known in the prior art does not say anything about whether the claims are directed to an abstract idea – and it seems apparent that the idea of using composite categories to define shows is indeed abstract, ***even if it was wholly novel at the time of filing***."  Appx016.  But the point is that if "combining categories" was "wholly novel at the time," it would not fall into the *Alice/Bilski* new category of abstract ideas that are "fundamental" and "long prevalent."  Amici respectfully submit that the identification of these alleged "abstract ideas" by *Netflix*, without regard to their novelty at the time of the invention, was error under an *Alice* framework.

The errors made below should be reversed, as they have already polluted other decisions.  For example, *BBiTV* erroneously relied in part on *Netflix*'s finding that "patents premised on using combinations of categorical information to organize videos and creating user 'bookmarks' saved through a 'media-on-demand server' were found to claim abstract ideas" in identifying, e.g., "hierarchical ordering based on metadata to facilitate the display and locating of video content" as an "abstract idea."  *BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at \*17; *BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at \*21 (same).  Likewise, *Versata* erroneously relied, in part, on *Netflix* in finding that "a method of searching for information based on particular categories is an abstract idea" and that "an unconventional abstract idea is still an unpatentable abstract idea."  *Versata Software*, 2015 U.S. Dist. LEXIS 132000, at \*34–35, \*63.  *Netflix*'s misapplications of *Alice* should be reversed and corrected before they further infect the case law.

> **B.    *Netflix* Erred in Identifying Overly-Detailed Abstractions of the Challenged Claims as "Abstract Ideas," Thus Erroneously Stripping All Meaning from the Two-Part *Alice* Framework**

*Netflix* also improperly used abstractions of the claims to define the alleged "abstract idea," thus improperly including substantially more detail into the alleged "abstract idea" than allowed for by Supreme Court precedent.  In particular, these overly-detailed alleged "abstract ideas" run afoul the Supreme Court's warning

14

that courts should "tread carefully in construing this exclusionary principle *lest it swallow all of patent law*." *Alice*, 134 S. Ct. at 2354; *Mayo*, 132 S. Ct. at 1293. After all, "*[a]t some level*, '*all* inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1293); *see also Diehr*, 450 U.S. at 189 n.12 ("all inventions can be reduced to underlying principles of nature").

Rather than heed these warnings, *Netflix* erred in adopting overly-detailed abstractions of the claims instead of "fundamental," "long prevalent" and broadly-phrased "methods of organizing human activity" to which the claims purportedly relate.

For example, *Netflix* identified "using a user's viewing history *to visually distinguish watched programs from unwatched programs and to make recommendations*," as well as, *inter alia*, "categorizing shows using combination categories" and "bookmarking *across devices*" as alleged "abstract idea[s]." Appx016–17; Appx024; Appx030–31. Likewise, *BBiTV* erroneously identified something akin to "using the *same* hierarchical ordering *based on metadata to facilitate the display and locating of video content*" as an "abstract idea." *See BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at *18; *BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *21.

15

These abstractions often improperly import the ***novel*** details from the claims to define alleged abstract ideas, which should be "long prevalent." *See, e.g.*, Appx016–17; Appx019–20; Appx027–28; Appx030–31; Appx035–36 (ignoring novelty of alleged abstract idea as irrelevant); *BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at *18 ("The Court previously identified the following as the 'novel' underlying idea of the invention: 'creating a method for uploading videos via Internet with accompanying metadata, which allows the videos to be automatically listed in a cable company's EPG for viewer selection.' . . . This is essentially the abstract idea identified by HTI: 'using the same hierarchical ordering based on metadata to facilitate the display and locating of video content.'"); *BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *22 (same, replacing "HTI" with "TWC").  This is error that must be rejected and corrected.

This importing of extensive detail into alleged "abstract ideas" disregards the Supreme Court's careful consideration of what constitutes an "abstract idea."

Incorporating undue detail from the claim into alleged "abstract ideas" essentially dictates the outcome of the patent-eligibility analysis before step two is reached.  For one, by erroneously including the "novel" aspects, instead of merely the "long standing" aspects into the alleged "abstract idea," *Netflix* removed the aspects of the claim that in step two of the *Alice* analysis would be properly considered as "something more."  This is clearly error under *Mayo* and *Alice*.

16

Consider, for example, *Netflix*'s characterization of alleged abstract idea of the claims of the '962 Patent: "filtering search results ***using selectable categories***." Appx020. While perhaps "filtering" search results may have been prevalent prior to the invention, by redefining the alleged abstract idea to include "using selectable categories," the lower court improperly front-loaded a potential "inventive concept" into the alleged abstract idea. Accordingly, that detail was then discounted in step two, when a court is supposed to consider the "inventive" aspects that were not "long prevalent" under the *Alice* framework. *See* Appx021. This type of analysis is clearly contrary to the approach outlined in *Alice*, and risks "swallowing all of patent law."

Likewise, with respect to the '929 Patent, the district court identified the alleged abstract idea as "categorizing shows ***using combination categories***," even though this alleged abstract idea was "wholly novel at the time of filing." Appx016. If the abstract idea was instead defined based on the broader concept of "categorizing shows," to the extent that Defendants had shown that to be pre-existing, then the novel technique of "using combination categories" should have been enough to supply an "inventive concept" sufficient for patent-eligibility. This error perpetuates throughout *Netflix*. *See e.g.*, Appx027–28 ("Again, while Rovi may be correct that the claims are directed to a novel abstract idea, they

nonetheless are directed to an abstract idea, namely, the abstract idea of generating viewing recommendations.").

*BBiTV* perpetuated this same error by too narrowly defining the alleged abstract idea as "hierarchical ordering based on metadata to facilitate the display and location of video content." 2015 U.S. Dist. LEXIS 131729, at *17. Further, *BBiTV-TWC* added to this description, *inter alia*, the "same" metadata, 2015 U.S. Dist. LEXIS 131726, at *21, even though that narrowly defined concept was otherwise recognized by *BBiTV-TWC* as "inventive" in the context of obviousness, and by the Patent Trial and Appeal Board in two different post-issuance proceedings.[5]

Indeed, *Netflix*'s efforts to distinguish contrary precedent, illustrate this point. For example, *Netflix* distinguished *Card Verification* by asserting the invention in that case "did not cover all credit card verification systems, and instead was limited to applications that involved appending a 'tag.'" Appx022. It further distinguished "*Caltech*, where the court specifically found the claimed method 'does not capture many forms' of implementing the abstract idea of error correction." *Id.* However, the abstract ideas identified in those cases—"verifying

---

[5] *See BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *50–79; *Unified Patents, Inc. v. Broadband iTV, Inc.*, No. IPR2014-01222, Paper 8 at 13 (P.T.A.B. Jan. 5, 2015) (denying institution of IPR); *Hawaiian Telcom, Inc. v. Broadband iTV, Inc.*, No. CBM2014-00189, Paper 11 at 16 (P.T.A.B. Apr. 1, 2015) (denying institution of CBM).

a transaction" and "encoding and decoding data for error correction," respectively—did not incorporate excessive detail. *See Card Verification Solutions, LLC v. Citigroup Inc.*, No. 1:13-cv-06339, 2014 U.S. Dist. LEXIS 137577, at \*8 (N.D. Ill. Sept. 29, 2014); *Cal. Inst. of Tech. v. Hughes Communs., Inc.*, 59 F. Supp. 3d 974, 993 (C.D. Cal. 2014).

If *Netflix* and *BBiTV* had recognized the relevant abstract idea to be "delivery of video on demand content" (which would correspond in level of abstraction to "hedging risk"; "intermediated settlement"; "verifying a transaction"; or "encoding and decoding data for error correction"), then the inventive abstractions identified by these courts would, by definition, show that the claims were not directed to those broad abstract ideas under step one, and/or would be enough to supply an inventive concept under step two of the *Alice* framework. *Cf. DDR*, 773 F.3d at 1257–59.

Using overly-detailed "abstract ideas" is clearly not right, not dictated by *Alice*, *Mayo*, *Bilski*, or any other Supreme Court precedent, and is contrary to the Supreme Court's repeated admonition not to allow the judicially created abstract idea exception to statutory patent-eligibility analysis "swallow all of patent law."

Indeed, these overly-detailed alleged "abstract ideas" often are so unwieldy that the parties contesting patent-eligibility and the lower courts inconsistently identify them. *See, e.g.*, Appx016–18 ("using composite categories to define

19

[television] shows"; "using combination categories"; "using combination categories to categorize programs"). In *BBiTV*, not only did the different defendants urge different abstract ideas, which were adopted by the Court, *compare BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at *17; *with BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *21, the court went on to identify a host of other allegedly applicable abstract ideas coming from this line of erroneous district court decisions. *See BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at *17; *BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *20–21. Such inconsistent definitions are a strong indication that the claims-at-issue are ***not*** directed to a judicially excluded "abstract idea." *See DDR*, 773 F.3d at 1257 ("NLG's own varying formulations of the underlying abstract idea illustrate this difficulty" of identifying the precise nature of the abstract idea).

*Netflix*'s overly-detailed and inconsistently applied alleged "abstract idea" was error. *Netflix* failed to identify any "preexisting" or "long standing" ideas, and thus should be reversed.

## II.    *Netflix* Also Improperly Applied Step Two of the *Alice* Framework

*Netflix* also improperly applied the second step of the *Alice* framework, in at least three significant ways, as discussed herein.

### A.    *Netflix* Improperly Ignored "Inventive" Aspects of the Claimed Invention that Are "Non-Routine" or "Unconventional" Merely Because a Generic Computer Is Used

*Netflix* erred in step two of its analysis by erroneously ignoring "inventive" aspects of the claimed invention, which are admittedly not "routine or conventional," and to invalidate these patent claims merely because those inventive aspects use a computer.  This is error.

For example, in analyzing step two, after *Netflix* characterized the '709 Patents as being directed to the "novel" "abstract idea of generating viewing recommendations," Appx028, it went on to discount the computer-implemented steps because they purportedly "do not go beyond routine, conventional means of generating viewing recommendations."  Appx029.  But if "generating viewing recommendations" was indeed novel, then how could the claim be using "routine, conventional means of generating viewing recommendations"?  This is clear error. Claim 13 of the '709 Patent includes particular information in the claimed "viewing history database" (i.e. "program listing and associated program criteria"), a particular methodology for each of the "determining" steps (i.e., meeting "a user preference profile," and selecting from "a set of programs not yet watched"), which in turn are used in the applying step to achieve the new and unconventional result of "providing the personal viewing recommendation to a user."  The fact that

a computer is capable of performing these unconventional steps does not make them any more conventional.

While *Alice* does stand for the proposition that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," this means that use of a generic computer *of itself* does not confer patentability; however, use of a computer does not ***destroy*** patent-eligibility. *See Alice*, 134 S. Ct. at 2358. *Alice* mandates that the additional elements, even if added by the computer, are relevant and must be considered both separately and as an ordered combination, in step two. *Id.* at 2355. These computer limitations may add the inventive concept required for patent-eligibility. *Cf. id.* at 2357–58 (comparing *Benson*, in which "the computer implementation did not supply the necessary inventive concept," with *Diehr*, in which the "additional steps" that included making calculations on a computer did supply the required inventiveness); *DDR*, 773 F.3d at 1258 (finding claims-at-issue patent-eligible because they were directed to a novel solution, using a potentially "well-known" concept, to solve a technology-driven problem).

*Netflix* erred in over-reading *Alice*.

Like the technology involved in *Diehr*, the technology at issue in this appeal has long been the subject of patent protection. *Cf. Diehr*, 450 U.S. at 184 n.8 ("We note that as early as 1854 this Court approvingly referred to patent eligibility of

processes for curing rubber.").  Indeed, there are countless issued patents that relate to this technology.[6]  The fact that they all, "at some level," could be characterized as relating to the same alleged "abstract idea," but they achieve the same objective using different solutions, illustrate how there is no risk of "preemption."

For example, *Netflix* and *BBiTV* both found their respective patents-at-issue, which are related to electronic program guides and media-on-demand systems, allegedly directed to similar abstract ideas with no sufficient "inventive concept." *See BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at *16–17 (relying, in part, on *Netflix* for support that an alleged "abstract idea" related to organizational and product group hierarchies was an abstract idea); *BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *20–21 (same); Appx016–20; Appx031.  However, these distinct patents apply these allegedly similar abstract ideas in novel, and distinct ways *as the courts did not refute*.  Indeed, *BBiTV-TWC* first found the claims patent-ineligible, but then went on to reject defendants' arguments that the '336 Patent's claims are obvious or anticipated over prior art because of at least two specific additional inventive elements of the claim that went beyond the alleged (and overly-detailed) "abstract" idea.  *See BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *87.

---

[6] The patents-at-issue in *BBiTV* and *Netflix* are just a handful of the thousands of patents issued in the patent class for "Interactive Video Distribution Systems" (U.S. Class 725).

*Alice* and *Mayo* recognized that novelty considerations under section 102 might inform a patent-eligibility analysis under section 101. *See Alice*, 134 S. Ct. at 2357 (claims are patent-eligible if the claim contains an "inventive concept"); *Mayo*, 132 S. Ct. at 1304 ("We recognize that, in evaluating the significance of additional steps, the § 101 patent eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap"); *see also Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015) ("Courts have found guidance in deciding whether the allegedly abstract idea . . . is indeed known, conventional, and routine, or contains an inventive concept, by drawing on the rules of patentability.").

The inventive aspects of the claim that warrant novelty and nonobviousness under sections 102 and 103 coincide with the "inventive concept" sufficient to "transform" the claimed abstract idea into a patent-eligible application, even if done with a computer. *Alice*, 134 S. Ct. at 2357; *Mayo*, 132 S. Ct. at 1294, 1298.

**B.    *Netflix* Improperly Strips Away Elements of the Claims to Erroneously Conclude that the Claims Could Be Performed by Hand**

Relatedly, *Netflix* failed to follow Supreme Court guidance that all of the additional elements of each claim be considered both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355.

Indeed, *Diehr*'s discussion regarding the relationship between novelty under section 102 and patent-eligibility under section 101 was driven by the doctrine that all claim elements must be evaluated as a whole. *Diehr* rejected petitioner's arguments that if all of the additional elements of the claims-at-issue were old, and the abstract idea must be assumed to be in the prior art, that the claims could not be inventive. *Diehr* explained, under well-established precedent relating to process claims, that:

> In determining the eligibility of respondents' claimed process for patent protection under § 101, their claims must be considered as a whole. It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because ***a new combination of steps in a process may be patentable even though all the constituents of the combination were well known*** and in common use before the combination was made.

*Diehr*, 450 U.S. at 188–89. Thus, "[t]he fact that one or more of the steps in [the claimed] process may not, in isolation, be novel or independently eligible for patent protection [was] irrelevant to the question of whether the claims as a whole recite subject matter eligible for patent protection under § 101." *Diehr*, 450 U.S. at 193 n.15. Of course, the Supreme Court has continued to adhere to this claim-centric rule for patent-eligibility, and continued to do so in *Alice*. *See Alice*, 134 S. Ct. at 2355 n.3 ("patent claims 'must be considered as a whole'") (quoting *Diehr*, 450 U.S. at 188); *see also Mayo*, 132 S. Ct. at 1294 (Supreme Court precedent "insist[s]" that a claim directed to a natural law "also contain other elements or a

25

combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself.") (citing *Flook*, 437 U.S. at 594 and *Bilski*, 561 U.S. at 601–02); *cf. Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent claim is deemed material to defining the scope of the patented invention.").

Contrary to this precedent, *Netflix* excluded limitations from each of the five patents-at-issue determining that the summarized versions of the claims described preemptive abstract ideas. For example, *Netflix* stated that the "the idea of using combination categories [was] limited only by the use of a 'processor' and a 'receiver,' both of which are generic computer components of the type rejected in *Alice*." Appx017. Yet, in so holding, *Netflix* simply disregarded Rovi's identification of the "unconventional steps" also included as additional limitations of the claim. *See id.*

This error of stripping elements out of the claim in an *Alice* analysis is widespread among the lower courts. *BBiTV*'s failure to even reproduce the detailed claim at any point in the opinion exemplifies the tendency among many lower courts to neglect to meaningfully consider all of the limitations of the claims. *BBiTV*, instead of including the full claims in its opinion, resorted only to "summar[ies]," which the Court itself recognized did not "capture all of the precise terms used in the patent itself." *See BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at

26

*14–15, n.12; *BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *18–19, n.15.
Thus, the court could not have considered all of the additional elements of the
claim, both separately and as an ordered combination, as dictated by *Alice*.

This failure to consider ***all*** of the elements of the claims-at-issue is yet
another error that calls for reversal in *Netflix*.

### C.    *Netflix* Improperly Fails to Consider Concrete Technological Limitations

The *Netflix* claims relate to very technological issues.  The delivery of video-
on-demand is concrete and well-defined, and the claimed inventions cannot be
accomplished in the human mind or performed with pencil and paper.
Nonetheless, *Netflix* held with respect to '762 Patent claims, that "the human mind
is certainly capable of distinguishing between watched and unwatched programs,
and making recommendations based on a user's viewing history."  Appx026.  This
type of analysis ignores the fact that this claim is directed to "[a] method for use in
a client-server interactive television program guide system for tracking a user's
viewing history" which explicitly requires that the "storing" be "on a program
guide server," that the results be displayed "with a program guide client
implemented on the user television equipment."  Appx023 (quoting Claim 1).  To
suggest that this claim could be performed solely in a "human mind" is absurd.[7]

---

[7] *Cf. Hulu, LLC v. iMTX Strategic, LLC*, No. CBM2015-00147, Paper 14 at 13–14
(P.T.A.B. Nov. 30, 2015) (claims directed to content delivery systems comprising

Other lower courts have made similar errors. *See, e.g.*, *BBiTV-HT*, 2015 U.S. Dist. LEXIS 131729, at *14 (claim required, among many other limitations, "Enabling the online uploading of videos" content in a digital video format even though there is no way to "upload" video content by hand); *BBiTV-TWC*, 2015 U.S. Dist. LEXIS 131726, at *18 (same).

Any interpretation that the claims ***can*** be accomplished merely in a human mind or by hand confuses the origin of the "pencil and paper" doctrine. *Flook* explained that the computations of the underlying mathematical algorithm could be "made by pencil and paper calculations." But the claims in *Flook* did not even include a computer, even though the patent's abstract made it clear that the claimed process would ideally be performed by a computer. *See Flook*, 437 U.S. at 586. The "pencil and paper" line of reasoning follows from the previously recognized

a "media server" and "transaction server" were not abstract, and were "rooted" in "non-abstract computer network technology"); *Global Tel*Link Corp. v. Securus Techs. Inc.*, No. PGR2015-00013, Paper 18 at 10–11 (P.T.A.B. Dec. 8, 2015) (denying institution on section 101 grounds as the alleged abstract idea could be performed without practicing the concrete, technological limitations of the claim); *Chamberlain Grp., Inc. v. Linear LLC*, No. 1:14-cv-05197, 2015 U.S. Dist. LEXIS 87876, at *20–21, 28 (N.D. Ill. July 7, 2015) (claims-at-issue were not capable of being "performed mentally"); *Intellectual Ventures I LLC v. Symantec Corp.*, Nos. 1:10-cv-01067, 1:12-cv-01581, 2015 U.S. Dist. LEXIS 52527, at *59 (D. Del. Apr. 22, 2015) ("the human mind cannot perform the steps" of the claim-at-issue, which "has computer-centric implications"); *Caltech*, 59 F. Supp. 3d at 994 (the "mental steps" analysis is "unhelpful for computer inventions" as "pencil and paper can rarely produce the actual effect of the invention"); *Card Verification*, 2014 U.S. Dist. LEXIS 137577, at *12 ("an entirely plausible interpretation of the claims include a limitation requiring pseudorandom tag generating software that could not be done with pen and paper").

"mental processes" exception. *See, e.g.*, *Mayo*, 132 S. Ct. at 1293 ("'Phenomena of nature, though just discovered, **mental processes**, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work.'") (quoting *Benson*, 409 U.S. at 67); *Diehr*, 450 U.S. at 195 (Stevens, J., dissenting) ("Prior to 1968, well-established principles of patent law probably would have prevented the issuance of a valid patent on almost any conceivable computer program. Under the 'mental steps' doctrine, processes involving mental operations were considered unpatentable.").

But neither of these doctrines can be reasonably extended to encompass processes that involve specific and concrete machinery. *See, e.g.*, *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, . . . there is no evidence here that the calculations here can be performed entirely in the human mind.").

*Netflix* should be reversed for this additional reason.

## CONCLUSION

Amici respectfully request that this Court reverse *Netflix*, and help clarify

how computer-implemented claims can be found patent-eligible.


December 18, 2015                          Respectfully submitted,

                                           */s/ Charles R. Macedo*
                                           Charles R. Macedo
                                           Sandra A. Hudak
                                           AMSTER, ROTHSTEIN & EBENSTEIN LLP
                                           90 Park Avenue
                                           New York, NY 10016
                                           (212) 336-8000
                                           cmacedo@arelaw.com
                                           shudak@arelaw.com

                                           *Counsel for Amicus Curiae Broadband iTV,
                                           Inc., Double Rock Corporation, Island
                                           Intellectual Property, LLC, Access Control
                                           Advantage, Inc.*, *and Fairway Financial U.S.,
                                           Inc.*

# United States Court of Appeals
# for the Federal Circuit

*Netflix, Inc. v. Rovi Corporation,* 2015-1917

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by AMSTER ROTHSTEIN & EBENSTEIN LLP, counsel for *Amici Curiae*, Broadband iTV, Inc., *et al.,* to print this document. I am an employee of Counsel Press.

On **December 18, 2015** counsel has authorized me to electronically file the foregoing **BRIEF OF *AMICI CURIAE* BROADBAND iTV, INC., DOUBLE ROCK CORPORATION, ISLAND INTELLECTUAL PROPERTY, LLC, ACCESS CONTROL ADVANTAGE, INC., AND FAIRWAY FINANCIAL U.S., INC. IN SUPPORT OF APPELLANTS** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Roderick George Dorman
(Principal Counsel)
Lawrence M. Hadley
McKool Smith Hennigan, P.C.
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
213-694-1200
rdorman@mckoolsmithhennigan.com
lhadley@mckoolsmithhennigan.com
*Counsel for Appellants*

Ashok Ramani
(Principal Counsel)
Edward A. Bayley
Sharif E. Jacob
Michael S. Kwun
Keker & Van Nest, LLP
633 Battery Street
San Francisco, CA 94111
415-391-5400
ARamani@kvn.com
ebayley@kvn.com
sjacob@kvn.com
mkwun@kvn.com
*Counsel for Appellee*

Joel Lance Thollander                John M. Whealan, Attorney
McKool Smith, P.C.                   4613 Merivale Road
300 W 6th Street                     Chevy Chase, MD 20815
Austin, TX 78701                     202-994-2195
512-692-8735                         jwhealan@law.gwu.edu
jthollander@mckoolsmith.com          *Counsel for Appellants*
*Counsel for Appellants*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

December 18, 2015                                    /s/ Elissa Matias
                                                     Counsel Press

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 29(c)(5), I certify that the foregoing *Amici Curiae* Brief complies with the applicable type-volume limitations.  Excluding those portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this brief contains 6,710 words.  This certificate was prepared in reliance on the word count of the word-processing system (Microsoft Office Word 2010) used to prepare this brief.

This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman font.


Dated: December 18, 2015         By: */s/ Charles R. Macedo*_____
                                         Charles R. Macedo
                                         AMSTER, ROTHSTEIN & EBENSTEIN LLP

                                         *Counsel for Amicus Curiae Broadband iTV,*
                                         *Inc., Double Rock Corporation, Island*
                                         *Intellectual Property, LLC, Access Control*
                                         *Advantage, Inc.*, *and Fairway Financial U.S.,*
                                         *Inc.*