**Docket No. 2015-1917**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

NETFLIX, INC.,

*Plaintiff/Counterclaim Defendant - Appellee,*

v.

ROVI CORPORATION, ROVI TECHNOLOGIES CORPORATION,
ROVI GUIDES INC., fka Gemstar-TV Guide International, Inc.,
UNITED VIDEO PROPERTIES, INC.,

*Defendants/Counterclaimants – Appellants*

APTIV DIGITAL, INC., STARSIGHT TELECAST, INC.,

*Counterclaimants - Appellants*

*On Appeal from the United States District Court for the Northern District of California,
No. 4:11-cv-06591-PJH · Honorable Phyllis J. Hamilton, United States District Judge*

## BRIEF OF APPELLEE NETFLIX, INC.

ASHOK RAMANI, ESQ.
MICHAEL S. KWUN, ESQ.
SHARIF E. JACOB, ESQ.
EDWARD A. BAYLEY, ESQ.
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, California 94111-1809
(415) 391-5400 Telephone
(415) 397-7188 Facsimile

*Attorneys for Appellee,
Netflix, Inc.*

March 28, 2016

 COUNSEL PRESS · (800) 3-APPEAL                    PRINTED ON RECYCLED PAPER

# CERTIFICATE OF INTEREST

Counsel for Plaintiff/Counterclaim Defendant – Appellee Netflix, Inc. certifies:

1.    The full name of every party or amicus represented by me is: Netflix, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: None.

3.    Any parent corporation and any publicly held corporation that owns 10% or more of its stock: None.

4.    The names of all law firms and the partners or associates that have appeared for the party in the lower tribunal or are expected to appear for the party in this court are:

Keker & Van Nest LLP: Ashok Ramani, Michael S. Kwun, Sharif E. Jacob, Edward A. Bayley, Justina K. Sessions, Stacy S. Chen,* Tia A. Sherringham*

*Attorney no longer with the firm

DATED: March 28, 2016          By: s/Michael S. Kwun
                                    MICHAEL S. KWUN

i

# TABLE OF CONTENTS

**Page**

Certificate of Interest .................................................................... i

Table of Contents.......................................................................... ii

Table of Authorities...................................................................... iv

Statement of Related Cases ......................................................... vii

I.    Introduction ........................................................................ 1

II.   Statement of the Issues....................................................... 7

III.  Statement of the Case ......................................................10

      A.   The parties' dispute and the district court proceedings ....... 10

      B.   The '906 patent ......................................................... 12

      C.   The '709 patent.......................................................... 18

IV.   Summary of Argument......................................................21

V.    Argument .........................................................................23

      A.   There is no presumption of validity under 35 U.S.C.
           § 101, and Netflix has overcome any presumption,
           even if there is one ................................................... 25

      B.   Rovi's appeal is limited to claim 1 of the '906 patent
           and claim 13 of the '709 patent ................................ 27

      C.   Claim 1 of the '906 patent claims unpatentable subject
           matter, because it is directed to an abstract idea with
           no details of implementation ................................... 31

           1.   Claim 1 of the '906 patent is directed to the abstract
                idea of bookmarking across devices ............................ 32

           2.   Claim 1 of the '906 patent lacks an inventive
                concept that transforms the abstract idea into
                patentable subject matter ............................................. 41

a.   The inventors conceded that the individual limitations were conventional ............................ 41

b.   The ordered combination adds nothing to the individual limitations, and merely describes the abstract idea of bookmarking across devices ..... 43

c.   The *Alice* two-step framework demonstrates the preemptive effect of the claimed method ..... 46

d.   The district court did not resolve any disputed questions of material fact .................... 47

e.   The claimed method does not improve an existing technology ........................................ 50

D.   Claim 13 of the '709 patent claims unpatentable subject matter because it is directed to an abstract idea, implemented only with conventional steps recited at a high level of generality ....................... 51

1.   Claim 13 of the '709 patent is directed to the abstract idea of generating viewing recommendations ............ 53

2.   Claim 13 of the '709 patent lacks an inventive concept that transforms the abstract idea into patentable subject matter ............................................ 58

a.   The individual limitations are conventional ...... 58

b.   Dr. Shamos's testimony is irrelevant, and thus does not create a dispute of material fact .................................................................... 61

c.   The ordered combination of the limitations does not recite an inventive concept ................... 65

d.   The claimed method does not recite an improvement to a technological process ............ 67

VI.   Conclusion ..................................................................... 68

Certificate of Service ............................................................. 70

Certificate of Compliance ..................................................... 72

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Aguilar v. Int'l Longshoremen's Union Local #10,*
    966 F.2d 443 (9th Cir. 1992) ........................................................ 47

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ............................................... *passim*

*Amoco Oil Co. v. United States,*
    234 F.3d 1374 (Fed. Cir. 2000) ...................................................... 28

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
    788 F.3d 1371 (Fed. Cir. 2015), *petition for cert. filed*
    (U.S. Mar. 21, 2016) (No. 15-1182) ........................................ 46, 47

*Ass'n for Molecular Pathology v. Myriad Genetics., Inc.,*
    133 S. Ct. 2107 (2013) .................................................................... 24

*Bilski v. Kappos,*
    130 S. Ct. 3218 (2010) ......................................................... 7, 39, 62

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
    489 U.S. 141 (1989) .......................................................................... 4

*Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,*
    59 F. Supp. 3d 974 (C.D. Cal. 2014) .............................................. 25

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
    776 F.3d 1342 (Fed. Cir. 2014), *cert. denied,*
    136 S. Ct. 119 (2015) ................................... 30, 34, 39, 45, 56

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ...................................................... 34

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ...................................................... 44

*Diamond v. Diehr,*
    450 U.S. 175 (1981) ......................................................... 7, 39, 40, 65

*Digitech Image Techs. v. Elecs. for Imaging, Inc.,*
    758 F.3d 1344 (Fed. Cir. 2014) ................................................ 25, 61

*Funk Bros. Seed Co. v. Kalo Inoculant Co.,*
    333 U.S. 127 (1948) ......................................................................... 5

*In re Abele,*
    684 F.2d 902 (C.C.P.A. 1982) ................................................. 61, 62

*In re Bilski,*
    545 F.3d 943 (Fed. Cir. 2008) ...................................................... 61

*In re Smith,*
    No. 2015-1664, 2016 WL 909410 (Fed. Cir. Mar. 10, 2016) .... 35, 56

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
    792 F.3d 1363 (Fed. Cir. 2015) ................................. 3, 54, 55, 58, 66

*Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.,*
    76 F. Supp. 3d 536 (D. Del. 2014) .................................................. 54

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) ............................................ 6, 35, 36

*LeRoy v. Tatham,*
    55 U.S. 156 (1852) ............................................................................ 4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    132 S. Ct. 1289 (2012) .......................................................... *passim*

*Microsoft Corp. v. i4i Ltd. P'ship,*
    131 S. Ct. 2238 (2011) .................................................................... 26

*Modern Telecom Sys. LLC v. Juno Online Servs., Inc.,*
    No. SA CV 14-0348-DOC (ANx), 2015 WL 1240182
    (C.D. Cal. Mar. 17, 2015) .............................................................. 25

*Mortg. Grader, Inc. v. First Choice Loan Servs.,*
    811 F.3d 1314 (Fed. Cir. 2016) ..................................................... 63

*O'Reilly v. Morse,*
    56 U.S. 62 (1853) ............................................................................. 5

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    788 F.3d 1359 (Fed. Cir.), *cert. denied,* 136 S. Ct. 701 (2015) ....... 68

*Parker v. Flook,*
    437 U.S. 584 (1978) ....................................................................... 55

*Perfect 10, Inc. v. Amazon. com, Inc.,*
    487 F.3d 701 (9th Cir. 2007) ........................................................ 15

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,*
    923 F. Supp. 1231 (N.D. Cal. 1995) ............................................. 15

*Rubber-Tip Pencil Co. v. Howard,*
    87 U.S. 498 (1874) ........................................................................ 34

*Rumsfeld v. United Techs. Corp.,*
    315 F.3d 1361 (Fed. Cir. 2003) .................................................... 47

*Sage Prods., Inc. v. Devon Indus., Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997) ....................................... 8, 9, 28, 29

*SmithKline Beecham Corp. v. Apotex Corp.,*
    439 F.3d 1312 (Fed. Cir. 2006) ................................ 8, 9, 29, 30, 66

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014), *cert. denied,*
    135 S. Ct. 2907 (2015) ........................................ 3, 6, 23, 43, 49, 50

*United States v. Dubilier Condenser Corp.,*
    289 U.S. 178 (1933) .................................................................. 4, 6

*Versata Dev. Grp., Inc. v. SAP Am., Inc.,*
    793 F.3d 1306 (Fed. Cir. 2015), *petition for cert. filed*
    (U.S. Mar. 11, 2016) (No. 15-1145) .................................. 38, 43, 45

## Statutes and Rules

19 U.S.C. § 1337 .............................................................................. 10

35 U.S.C. § 101 ........................................................................ *passim*

35 U.S.C. § 282 .............................................................................. 25

Fed. R. Civ. P. 56(c)(4) ................................................................. 47

Fed. R. Evid. 702(b) ...................................................................... 48

## STATEMENT OF RELATED CASES

No appeals in or from the same civil action or proceeding in the lower court or body have previously been before this or any other appellate court.

Counsel for Plaintiff/Counterclaim Defendant – Appellee Netflix, Inc. is unaware of any cases pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal.

## I.     Introduction

The district court's judgment invalidating the asserted claims of the five patents-in-suit for claiming abstract ideas is well-reasoned and based on sound authorities, and should be affirmed. Indeed, Appellants Rovi Corporation, Rovi Technologies Corporation, Rovi Guides, Inc., United Video Properties, Aptiv Digital, Inc. and Starsight Telecast, Inc. (collectively, "Rovi") challenge the district court's judgment only with respect to two of the five invalidated patents, U.S. Patent Nos. 7,103,906 (the "'906 patent") and 7,065,709 (the "'709 patent").

The '906 patent—the "bookmarking" patent—broadly claims the idea of bookmarking across devices. The claims recite the necessary basics of this idea—two devices, a bookmark and communicating with each device in a manner appropriate to its capabilities. But the claims do not recite any inventive implementation details. The claim language does not describe the type of content (generically described as "media"), the technological formats used, the technological means by which device properties are identified, or the mechanism by which a bookmark is recorded. The claim language thus does nothing more than state an

abstract idea—bookmarking across devices—and exhort the practitioner to apply it.

The '709 patent broadly claims the idea of generating viewing recommendations. That idea is not only abstract, it long predates computers; there is nothing inventive about making recommendations based on preferences and past experiences. Nothing inventive is disclosed by limitations adding conventional steps—akin to those long used by parents, teachers and librarians to make recommendations—such as relying on the user's viewing history, making recommendations that match criteria derived from viewing preferences and recommending only programs that have not yet been viewed. These steps merely disclose well-known, routine activity that was previously engaged in by scientists in the field—and by parents, teachers and librarians.

In an argument concerning the '906 patent, Rovi posits, "If, decades ago, an engineer developed a physical converter that allowed VCRs to deliver media on a variety of displays (TVs, projectors, CRTs, etc.), no one would urge that such a device represents a patent-ineligible 'abstract idea.'" Appellants' Opening Brief ("AOB") 42. But the

mere idea of such a converter—imagine a hypothetical patent claim that simply recited, "A physical system for converting media on a variety of displays," with no further limitations—would *not* have been patentable subject matter. A concrete, tangible *solution* for accomplishing that conversion might pass muster under the framework adopted in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014), but that hypothetical claim, like the claims at issue in this appeal, offers no solution.

For example, claim 1 of the '906 patent relies on broad and generic limitations—delivering "media" through a "communication link" to a "device" in a format compatible with that device—that "simply instruct the practitioner to implement the abstract idea with routine, conventional activity." *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 715 (Fed. Cir. 2014), *cert. denied,* 135 S. Ct. 2907 (2015). Likewise, claim 13 of the '709 patent relies on conventional implementation details—such as databases and user profiles—that this Court has already held are "generic computer elements." *Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1368 (Fed. Cir. 2015). The technological-sounding jargon of these claims is no more than "a

drafting effort designed to monopolize the [abstract idea] itself." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 132 S. Ct. 1289, 1297 (2012).

The district court's decision invalidating the five patents-in-suit builds on a long line of precedent from the Supreme Court and this Court. These precedents recognize that the Patent Act "embodies a carefully crafted bargain for encouraging the creation and disclosure of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 150–51 (1989). In exchange for the exclusive right to practice, the inventor "gives something of value to the community by adding to the sum of human knowledge." *United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 186 (1933).

Patents grant extraordinary rights, and so it has long been held that there are limits on what is eligible to be patented. "A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right." *LeRoy v. Tatham,* 55 U.S. 156, 174–75 (1852). Such fundamental

truths belong to humankind, not to a single inventor. *See Funk Bros. Seed Co. v. Kalo Inoculant Co.,* 333 U.S. 127, 130 (1948) (stating that such principles "are part of the storehouse of knowledge of all men").

Equally, inventors cannot simply claim all useful results obtained from an abstract idea, such as "the use of the motive power of the electric or galvanic current." *O'Reilly v. Morse,* 56 U.S. 62, 112 (1853). In such a case, the inventor's disclosure would not be commensurate with the monopoly granted by a patent, because to be useful, the abstract idea disclosed—using electric or galvanic force as a motive power—"must be combined with, and passed through, and operate upon, certain complicated and delicate machinery, adjusted and arranged upon philosophical principles, and prepared by the highest mechanical skill." *Id.* at 117.

So, too, is it improper for an inventor to disclose the problem to be solved, and through artful drafting then claim all methods or machines that solve that problem. "[O]ne must do more than simply state the law of nature while adding the words 'apply it.'" *Mayo,* 132 S. Ct. at 1294. Similarly, "[s]tating an abstract idea 'while adding the words "apply it"' is not enough for patent eligibility." *Alice,* 134 S. Ct. at 2358 (quoting

*Mayo,* 132 S. Ct. at 1294). A patent claim that "describes the effect or result [of an abstract idea] dissociated from any method by which [that result] is accomplished" is not directed to patent-eligible subject matter. *Internet Patents Corp. v. Active Network, Inc.* 790 F.3d 1343, 1348 (Fed. Cir. 2015).

In each of these situations, the public has not gotten what it bargained for as a *quid pro quo* for the monopoly granted—"something of value to the community" that "add[s] to the sum of human knowledge." *Dubilier,* 289 U.S. at 186. The devil is in the details, and a disclosure at too lofty a level—for example, a disclosure that electricity can move things at a distance—simply does not contribute enough *pro publica* to warrant a patent, given the broad, preemptive result that would obtain.

And, more precisely, the devil is in the *inventive* details. The disclosure of conventional implementation details cannot transform an abstract idea into a claim eligible for patenting. Abstract ideas that "are not tied to any particular novel machine or apparatus, only a general purpose computer" are not patent eligible. *Ultramercial,* 772 F.3d at 716. Attempts to limit the abstract idea to a particular technological

environment likewise do not impart patent eligibility. *Bilski v. Kappos,* 130 S. Ct. 3218, 3230 (2010) (citing *Diamond v. Diehr,* 450 U.S. 175, 191 (1981)). And disclosing implementation details that are no more than "well understood, routine, conventional activity previously engaged in by scientists who work in the field"—that is, disclosures that *repeat* what is known rather than *adding* to the sum of human knowledge— also will ordinarily not suffice to transform unpatentable into patentable subject matter. *Mayo,* 132 S. Ct. at 1298.

This is now well-trodden ground. Rovi merely repackages arguments that both the Supreme Court and this Court have rejected time and again. Appellee Netflix, Inc. ("Netflix") requests that the Court affirm in full.

## II.  Statement of the Issues

The only issues in this appeal are whether claim 1 of the '906 patent and claim 13 of the '709 patent claim patent-ineligible subject matter. *See, e.g.,* AOB 47, 55, 57; 35 U.S.C. § 101.

No other patents are at issue, because Rovi does not challenge the district court's judgment of invalidity with respect to any other patents. AOB 24 n.2 ("Rovi has limited this appeal to the '906 and '709

patents."); *SmithKline Beecham Corp. v. Apotex Corp.,* 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("arguments not raised in the opening brief are waived").

No claims other than claim 1 of the '906 patent and claim 13 of the '709 patent are at issue for three reasons:

1. *The claims that Rovi did not assert below are not at issue on appeal.* In the district court, Rovi asserted infringement only of claims 1–3, 6, 8 and 10–11 of the '906 patent and claims 13–20 of the '709 patent. A6026:13; A6026:17–18. Netflix moved for summary judgment of invalidity only of the asserted claims. A6045:11–12. Rovi's opposition to Netflix's motion was similarly limited to the asserted claims. A4188:27–28. An appellant cannot raise issues on appeal that were not first raised in the court below. *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("this court does not 'review' that which was not presented to the district court").

2. *Claims that Rovi does not mention in its brief are not at issue.* Of the claims asserted in the district court, Rovi makes no mention of claims 8 and 10–11 of the '906 patent and claims 15–20 of the '709

patent. This waives any challenge to the judgment with respect to those claims. *SmithKline,* 439 F.3d at 1319.

3. *Claims for which Rovi offers no reasoned argument are not at issue.* Rovi summarizes the substance of claims 2–4[1] and 6 of the '906 patent and claim 14 of the '709 patent, but only in its Statement of the Case, not in its Argument. AOB 12–13, 22–23.[2] Rovi provides no analysis or substantive argument about those claims. *See id.* This does not preserve for review any issue about those claims. *See SmithKline,* 439 F.3d at 1319–20 (where the "only statement that even approaches a substantive argument on novelty in the entire Argument section" of the appellant's opening brief was in a footnote, issue of novelty was waived).

Because Rovi's brief waives all other issues, this appeal is limited to whether claim 1 of the '906 patent and claim 13 of the '709 patent claim ineligible subject matter under 35 U.S.C. § 101.

---

[1] Claim 4 of the '906 patent was not at issue below, A6026:13, and thus is not at issue on appeal. *Sage Prods.,* 126 F.3d at 1426.

[2] Rovi's Argument briefly mentions claim 5 of the '906 patent, AOB 47–48, but that claim was not at issue below, A6026:13, and thus is not at issue on appeal. *Sage Prods.,* 126 F.3d at 1426.

### III. Statement of the Case

#### A. The parties' dispute and the district court proceedings

In 2011, Rovi sent an unsolicited letter to Netflix, advising that Netflix would "benefit from a license" to Rovi's patent portfolio and drawing Netflix's attention to several patents, including the '906 patent. A1004 (¶ 22). After further letters and an in-person meeting, Netflix sought a declaratory judgment with respect to five patents, including that the claims of the '906 patent are not patent eligible under 35 U.S.C. § 101. A1001 (¶ 6); A1005 (¶ 29); A1013 (¶ 66). Rovi asserted counterclaims that brought the total number of patents-in-suit to eight, including a counterclaim for infringement of the '709 patent. A1246 (¶ 146); A1248:9–10. Netflix responded with further counterclaims, including for a declaration that the claims of the '709 patent are not patent eligible under 35 U.S.C. § 101. A1601 (¶ 216).

Rovi also filed a complaint with the International Trade Commission ("ITC"), raising four of the eight patents from the district court action. A1778:9–10. The district court granted Netflix's unopposed motion for a stay pending resolution of the ITC complaint. A1862. The ALJ found that Rovi failed to prove a violation of 19 U.S.C. § 1337,

including with respect to the '906 and '709 patents. A7195. Rovi failed even to prove the most basic of requirements for an action before the ITC—that Netflix, which provides services *online,* imports anything at all. A7206; A7234–40 ('709 patent); A7429–35 ('906 patent). In light of the failure to prove an importation, the ALJ found that "there is no need for further analysis concerning direct or indirect infringement," but provided a further analysis in case the ITC disagreed with the ALJ's importation analysis. A7240; A7435. With certain modifications, the ITC adopted the ALJ's finding that Rovi failed to prove an importation. A7571–80.

Rovi did not appeal the ITC's decision and the district court lifted the stay. A1881. On Rovi's unopposed motion, the district court dismissed with prejudice Rovi's counterclaims for infringement of three of the patents-in-suit. A1986:13–21; A1991:26–92:3.

Rovi served its Disclosure of Asserted Claims and Infringement Contentions, asserting infringement of claims 1–3, 6, 8 and 10–11 of the '906 patent and claims 13–20 of the '709 patent. A6026:13; A6026:17–18. Among other things, Rovi accused "Netflix Hardware"—which it broadly defined as "any processor, computer, server, server farm, cloud

platform, or other equipment relating to the Netflix service (e.g., hardware controlled, used, or supplied by Netflix for accessing, providing, or interacting with or otherwise using the Netflix service)"— "as evidenced by accessing the Netflix service from . . . Netflix's websites." A6027; A6030:4–6 ('906 patent); A6033:6–8 ('709 patent).

Netflix filed a motion for summary judgment, arguing that all of the asserted claims cover ineligible subject matter under 35 U.S.C. § 101. A6045:11–12. The district court, after construing the claims, granted Netflix's motion. A55:19–56:7; A36:10–12.

Rovi filed a notice of appeal. A7188. Rovi now challenges the district court judgment only with respect to two of the patents-in-suit, the '906 and '709 patents. AOB 1, 24 n.2.

## B.    The '906 patent

On October 6, 1999,[3] four employees submitted a disclosure about a "[u]ser controlled, multi device, media on demand—system, method, service and business model" to their employer. A6079. They noted consumers' increasing reliance on "digital data and media." *Id.* At the

---

[3] A6071 (¶ 4); A6079.

12

time, bandwidth was often limited to "narrowband" connections, but "broadband access" through "cable modems and settop boxes, DSL, and various wireless means" was becoming increasingly common. A6080. This growth in broadband access—an external fact that they did not claim credit for discovering, inventing or causing—was "increasing user willingness to access digital media from PCs, TVs, and other devices." *Id.* In parallel, consumers were using more and more different digital devices, again due to the hard work of others such as Palm (maker of the then-popular Palm Pilot personal digital assistant) and Rio (maker of a then-popular MP3 music player). *Id.*

But even then, many technologies used today were already conventional. Streaming media—in a multiplicity of formats—was already widely available, with broadcast television being streamed to "hundreds of millions of televisions" and internet audio and video being streamed from "thousands of web sites" to users accessing "music clips," "internet radio," and "video clips of their favorite films." *Id.* Consumers were already able to pause and restart their streamed media options, including through use of digital video recorders such as TiVo and

Replay. *Id.* And, of course, that DVR feature was itself merely a computerized version of ubiquitous VCR technology. *Id.*

As the employees explained, many other streaming technologies were also already "well known in the field." A6088. To accommodate the "different device capabilities" such as the many media formats used by different devices, practitioners employed a "pervasive" feature called "[t]ranscoding"—a means for "converting one format to another." A6089. Different transcoding approaches were well known, too—for example, sometimes the transcoding was done using a proxy (an intermediary placed between the media server and the client device), which converted the media from the format offered by the server to a format suitable for the client. *Id.*

Of course, converting from one format to another is of no use unless the client device's preferred format can be determined. For this, "[c]apability exchanges" were already "known in the art." *Id.* XML— a public data standard—could be "used to enable such exchanges." *Id.* The employees offered the "everyday" example of two modems screeching at the beginning of a telephone connection "to find their

'common denominator', that is, a transmission speed both modems can support." *Id.*

The employees observed that "[t]he combination of media-on-demand, broadband access, and a multiplicity of devices each with its own capabilities and access characteristics brings the problem of user control." A6080. They claimed as their invention "a system, method, service and business model for user controlled, multi-device media on demand." *Id.* This would allow the user to access a movie "on one system (say a TV) as served by a video-on-demand server," pause the viewing and resume the same movie "potentially in another physical location, on a different device (ie a PC)" from the same point. *Id.*

To address the problem of user control, the employees suggested a "bookmark" of the paused location, so that it could be restarted later from the same point. *Id.* They noted that the media server could be connected "to multiple access networks," A6081—a model akin to the internet itself, because an "internet" is a network of networks.[4] The

---

[4] *See Perfect 10, Inc. v. Amazon. com, Inc.,* 487 F.3d 701, 711 (9th Cir. 2007) (citing *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,* 923 F. Supp. 1231, 1238 n.1 (N.D. Cal. 1995)).

15

user's subscriber record would need to track the user's bookmarks, each

bookmark indicating the program being watched, the position of the

bookmark and undefined "other relevant information." A6081.

But the disclosure makes no mention of the technological details

of *how* any of this information should be tracked—whether it should be

stored in memory or disk, in a text file, database or a data structure,

and so on. *See, e.g.,* A6086–87 (describing an exemplary bookmark in

terms of the types of data to be stored, but not *how* the data should be

stored). The technological means by which a device's capabilities would

be determined were not explained. *See, e.g.,* A6085–86 (describing an

"example capability exchange," and suggesting that it could be

performed by "even a telephone conversation between the user and an

operator at the ISP, MODS or IMA"). The technological details of how

the data would be streamed was not discussed.

The "invention" that the employees claimed in their disclosure

ultimately matured into the claims of the '906 patent. Claim 1 of the

'906 patent recites:

> A method for providing configurable access to media in a media-
> on-demand system comprising the steps of:

delivering the media to a first client device through a first communications link, wherein the media is configured in a format compatible with identified device properties of said first client device and said first client device is associated with a first user;

recording a bookmark specifying a position in the media; and

delivering the media to a second client device through a second communications link, said delivery to said second client device beginning at said position specified by said recorded bookmark, wherein the media is configured in a format compatible with identified device properties of said second client device and said second client device also is associated with said first user.

A69 (12:45–61).

Commensurate with the limited technological scope of the employee-employer disclosure, claim 1 offers no technological details of how media should be delivered, beyond the simple fact that it should be delivered "over a communications link." The process by which a bookmark should be recorded—the how, when, where and by what of the recording—is not explained; claim 1 states only that it is. The media should be delivered in a format that the client can use, but the technological process by which that is ensured—how the device properties should be identified, and what algorithm should be used for transcoding—is an exercise for the imagination.

### C.    The '709 patent

The '709 patent claims a priority date of August 21, 1998, the date on which a provisional patent application was filed. A71. At that time, "[c]able, satellite, and broadcast television systems provide[d] viewers with a large number of television channels." A112 (1:20–21). Viewers were long accustomed to using publications such as *TV Guide* to see what shows could be watched. *Id.* (1:21–24). Interactive program guides, displayed on the television screen itself, were also well known, with programs "typically displayed in a grid or table." *Id.* (1:32–33). A typical set-top box implementation allowed the viewer to navigate the grid using a remote control. *Id.* (1:27–29). The inventors suggested that in a client-server program guide, functionality might be limited due to "limited use of the resources of the server." *Id.* (1:42–44).

Claim 1 of the '709 patent recites a lengthy series of steps, in which a user can "define an expression" that is used to find programs. A123 (24:18–30). The server schedules "reminders" for the matching programs, and generates at least one "personal viewing recommendation" for one or more programs for which reminders have *not* been scheduled, but that match at least one criterion associated

with the matching programs. *Id.* (24:31–40); *see also* A85 (fig. 9a) &

A110 (fig. 23). Claims 2 and 3 add further limitations to this method,

claims 4–6 offer variations on claims 1–3, and similar system claims

(claims 7–12) follow. A123–24 (24:41–26:15).

But, whatever their merits, Rovi did not assert those claims

against Netflix and they are not at issue in this appeal. Claim 13 of the

'709 patent, which is at issue, recites a distinctly different (and shorter)

method:

> A method for use in an interactive program guide system for
> providing a customized viewing experience to a user, comprising:
>
> [a] generating a viewing history database comprising program
>     listings and associated program criteria;
>
> [b] determining at least one of the associated program criteria
>     from the viewing history database that meets a user
>     preference profile;
>
> [c] determining from a program listing database a set of
>     programs not yet watched;
>
> [d] applying the at least one of the associated program criteria
>     to the set of programs not yet watched to generate at least
>     one personal viewing recommendation; and
>
> [e] providing the personal viewing recommendation to a user.

A124 (26:16–29). The penultimate step, the "applying" step (step d),

directs the practitioner to generate a personal viewing recommendation

using criteria that are applied to a set of programs not yet watched. The three prior data gathering and manipulation steps provide conventional precursors to that penultimate step—information about what has been viewed must be gathered (step a), from which programs not yet watched can be determined; criteria matching a user's preferences must be determined (step b), so that there is a basis for generating a recommendation; and to ensure that the recommendations are for fresh material, programs not yet watched must be determined from the programs available (step c). The final step (step e) merely instructs the practitioner to provide the recommendation to the viewer. The claim as a whole thus amounts to conventional data-gathering and manipulation (steps a–c), the abstract idea itself (step d) and post-solution display (step e).

Claim 13 does not require technology. It mentions no technological advance by which a program guide server can identify the best criteria to use in making recommendations. Likewise, claim 13 proposes no improved technological means for tracking a viewing history. And claim 13 offers no technological solution for applying criteria more quickly or effectively.

## IV.    Summary of Argument

The claims at issue are patent ineligible under a straightforward application of the *Alice* framework. They are directed to abstract ideas and the limitations of the claims, considered both individually and as ordered combinations, fail to do significantly more than describe the abstract concepts themselves.

1. All but two of the patent claims addressed by the judgment below should be affirmed as invalid because Rovi's brief ignores them, and thus waives any challenge. Other than for claim 1 of the '906 patent and claim 13 of the '709 patent, Rovi develops no argument why the district court's judgment should be reversed. Moreover, Rovi at a minimum fails to dispute that claim 1 of the '906 patent and claim 13 of the '709 patent are representative of the other claims in those patents. Thus, the only issues before this Court are whether claim 1 of the '906 patent and claim 13 of the '709 patent claim ineligible subject matter.

2. Claim 1 of the '906 patent is directed to a mere abstraction—the idea of bookmarking across devices. Rovi repeatedly argues that claim 1 recites a *solution,* but fails to identify anything in the claim language

that does more than describe the problem itself, leaving the practitioner to devise a solution based on prior knowledge and experience.

Directing the practitioner to solve a problem is not inventive. Indeed, nothing in the claim language describes implementation details that transform the abstraction of bookmarking across devices into an inventive concept. Insofar as the claim language alludes to any implementation details at all, those details are conventional, as the inventors conceded even before applying for the '906 patent. Bookmarking across devices became a commercial reality not because of any inventive contribution from the named inventors, but because of the vast increase in available bandwidth that now allows high-quality content to be streamed to devices of all types. *See* AOB 7. Once the bandwidth problem was solved—by others, not by the inventors— practitioners were then able to bookmark across devices using nothing more than conventional steps.

3. Claim 13 of the '709 patent is also directed to an abstract idea— the idea of generating viewing recommendations. Indeed, the process outlined by the claim is no different from a viewer's decision, after perusing a paper copy of *TV Guide,* to watch a documentary that is

airing tonight because she hasn't seen it before and she likes documentaries.

Using the jargon of conventional computing—for example, databases and profiles—to recite how recommendations have long been made does not transform this abstract idea into an invention eligible for patenting. The claim language recites no technological improvement to these conventions—for example, it does not recite a new and improved database especially adapted for viewing histories or program listings, or any technological improvement on recommendation algorithms or their application.

For these reasons, claim 1 of the '906 patent and claim 13 of the '709 patent are invalid under 35 U.S.C. § 101. The district court's judgment should thus be affirmed in full.

## V.    Argument

By now, the framework for determining patent eligibility is well known. The first question is whether the invention falls within a statutory category of patent-eligible subject matter. 35 U.S.C. § 101; *Ultramercial,* 772 F.3d at 713–14.

But the § 101 inquiry does not end there, because there are three implicit exceptions to patent-eligible subject matter. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice,* 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics., Inc.,*133 S. Ct. 2107, 2116 (2013)). In *Alice,* the Supreme Court adopted for abstract ideas the same two-step framework the Court previously adopted for laws of nature. *Id.* at 2355 (citing *Mayo,* 132 S. Ct. at 1296–97).

At the first step, the court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts"—i.e. to laws of nature, natural phenomena, or abstract ideas. *Id.* If the claims are directed to a patent-ineligible concept, then at the second step, the court must determine whether the claims include a limitation, or combination of limitations, that ensures that the claim amounts to significantly more than the ineligible concept itself. *Id.*

### A.    There is no presumption of validity under 35 U.S.C. § 101, and Netflix has overcome any presumption, even if there is one.

Rovi asserts that Netflix must prove invalidity under 35 U.S.C. § 101 by clear and convincing evidence. AOB 35.[5] Netflix disagrees. Although the district court applied a statutory presumption of validity, A14:23 (citing 35 U.S.C. § 282), there is significant doubt that the presumption applies to questions of law, such as patent eligibility under 35 U.S.C. § 101. For example, this Court did not mention the presumption when concluding that a "device profile . . . is not a tangible or physical thing and thus does not fall within any of the categories of eligible subject matter." *Digitech Image Techs. v. Elecs. for Imaging, Inc.,* 758 F.3d 1344, 1349 (Fed. Cir. 2014); *see also, e.g., Modern Telecom Sys. LLC v. Juno Online Servs., Inc.,* No. SA CV 14-0348-DOC (ANx), 2015 WL 1240182, at *7 (C.D. Cal. Mar. 17, 2015); *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,* 59 F. Supp. 3d 974, 978 n.6 (C.D. Cal. 2014).

---

[5] Although Rovi's assertion appears in its brief under the heading "Standard of Review," whether the clear and convincing evidence standard applies is a question concerning Netflix's substantive burden, not the standard this Court applies in reviewing the district court's decision.

Even if there is a presumption, that should not impose on Netflix a burden of proving patent ineligibility under 35 U.S.C. § 101 by clear and convincing evidence because, as Justice Breyer has explained, the clear and convincing evidence standard "applies to questions of fact and not to questions of law." *See Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 2253 (2011) (Breyer, J., concurring).

Regardless, even if there is a presumption of validity, under any standard Netflix has overcome it. In response to an interrogatory seeking Rovi's factual and legal bases for arguing that the asserted claims are patent eligible, A3391:14–20, Rovi responded with little beyond boilerplate, arguing that the asserted claims of the '906 patent are entitled to a presumption of validity, are "tied to a particular machine and/or apparatus and transforms a particular article into a different state of thing" and that the concepts recited in the claim language "are not unpatentable abstract ideas for at least the reasons stated above." A3393:1–20. Rovi's response with respect to the asserted claims of the '709 patent repeated its response for the '906 patent almost verbatim (other than the recitation of claim limitations). *See* A3392:16–27 (also asserting that the claims are tied to "a particular

method"). Rovi never amended or supplemented this interrogatory response.

Rovi's argument is now more strident, but no more substantive. Rovi exclaims that the district court's decision "threatens to make these technological fields patent-ineligible in their entirety," AOB 4, but nowhere justifies this extraordinary claim. The two-step *Alice* framework applies to patent claims related to video streaming and program guides just as it applies to patent claims in other fields. Patent claims that disclose inventive technological contributions are patent eligible. Those that recite aspirational but abstract goals, leaving the implementation to the practitioner, are invalid under 35 U.S.C. § 101.

Applying the *Alice* two-step framework with or without a presumption of validity, the only claims at issue on appeal—claim 1 of the '906 patent and claim 13 of the '709 patent—both claim patent-ineligible subject matter.

## B.    Rovi's appeal is limited to claim 1 of the '906 patent and claim 13 of the '709 patent.

The '906 and '709 patents are the only patents at issue in this appeal. Rovi does not challenge the judgment of invalidity with respect to U.S. Patent Nos. 6,898,762, 7,945,929 and 7,974,962 (the "'762

patent," "'929 patent" and "'962 patent," respectively). A36:10–11; AOB 1 (Statement of Issues). *Amici,* however, make reference to these patents. *See* Brief of Broadband iTV et al. at 17 ('962 and '929 patents) & 27 ('762 patent). "But an appellant and an *amicus* may not split up the issues and expect the court to consider that they have all been raised on appeal." *Amoco Oil Co. v. United States,* 234 F.3d 1374, 1378 (Fed. Cir. 2000). Instead, "Appellant must raise in its opening brief all the issues it wishes the court to address." *Id.* Because Rovi's brief does not address the '762, '929 or '962 patents, those patents are not at issue in this appeal. The Court should affirm the judgment with respect to those patents.

Turning to the '906 and '709 patents, the claims that were not asserted below[6] are not at issue on appeal. An appellant cannot raise issues on appeal that were not first raised in the court below. *Sage Prods.,* 126 F.3d at 1426. Netflix's motion for summary judgment sought judgment of invalidity only with respect to the asserted claims.

---

[6] In the district court, Rovi asserted infringement only of claims 1–3, 6, 8 and 10–11 of the '906 patent and claims 13–20 of the '709 patent. A6026:13; A6026:17–18.

A6045:11–12. Rovi's opposition to Netflix's motion also limited itself to the asserted claims. A4188:27–28. None of the unasserted claims were at issue below, and thus none are at issue in this appeal.

And Rovi has waived any appeal with respect to all of the '906 and '709 patent claims that were asserted below except claim 1 of the '906 patent and claim 13 of the '709 patent. Rovi does not mention claims 8 and 10–11 of the '906 patent and claims 15–20 of the '709 patent *at all* in its brief. Rovi's brief thus preserves no issues for review with respect to these claims. *SmithKline,* 439 F.3d at 1319 ("arguments not raised in the opening brief are waived").

But Rovi's waiver extends further still. Rovi's cursory mention of claims 2–4[7] and 6 of the '906 patent and claim 14 of the '709 patent— found only in its Statement of the Case, not in its Argument, AOB 12– 13, 22–23—does not preserve any challenge to the judgment with respect to those claims. *See SmithKline,* 439 F.3d at 1319 (where the "only statement that even approaches a substantive argument on novelty in the entire Argument section" of the appellant's opening brief

---

[7] Claim 4 of the '906 patent was not at issue below, A6026:13, and thus is not at issue on appeal. *Sage Prods.,* 126 F.3d at 1426.

was in a footnote, issue of novelty was waived). In its Statement of the

Case, Rovi repeats what these claims say, but offers no *analysis*

explaining why any of these additional, conventional limitations offers a

basis for concluding that those claims are patent eligible. *See* AOB 12–

13, 22–23. Rovi's failure to develop any argument with respect to these

claims waives any challenge to the judgment that those claims are

invalid. *SmithKline,* 439 F.3d at 1319. Based on Rovi's waiver, the

Court should affirm the judgment with respect to claims 2–3, 6, 8 and

10–11 of the '906 patent and claims 14–20 of the '709 patent.

At a minimum, Rovi nowhere disputes that claim 1 of the '906

patent and claim 13 of the '709 patent are representative. *Content

Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d

1342, 1348 (Fed. Cir. 2014) (court may rely on a patentee's failure to

identify inventive concepts in other patent claims), *cert. denied,* 136 S.

Ct. 119 (2015). Thus, even if Rovi's waiver did not preclude all relief on

appeal with respect to the other claims, Rovi has at least waived any

argument that the other claims might be valid independent of claim 1 of

the '906 patent and claim 13 of the '709 patent. *SmithKline,* 439 F.3d at

1319.

**C.  Claim 1 of the '906 patent claims unpatentable subject matter, because it is directed to an abstract idea with no details of implementation.**

Rovi proclaims that claim 1 of the '906 patent addresses "a technological problem—a 'growing need for digital data delivery' methods that can account for the proliferation of different and often incompatible devices and file formats for viewing media." AOB 41 (quoting A64 (1:27–28)). Strikingly, this take on the purportedly technological problem does not even mention bookmarking. But in any event, this problem is not a technological problem. "[I]ncompatible devices and file formats" merely restates with technological jargon the same problem confronting humankind since the Tower of Babel—the need to communicate with those who speak different languages.

Moreover, Rovi points to no technological *solution* that claim 1 offers to this problem. Indeed, Rovi first frames the supposed solution by stating *what* it accomplishes (i.e. the problem it solves), not *how* it accomplishes it (the solution). *See* AOB 39 (referring to "a concrete technological solution—a 'user controlled multi-device media-on-demand system,' Appx57, that makes it possible to view the same

31

content in different locations, even on different devices that use incompatible media formats").

Claim 1 offers no technological take on solving the problem of devices that speak different languages. This is so because claim 1 offers no take on solving the problem at all, instead instructing the practitioner merely to ensure that "the media is configured in a format compatible with identified device properties" of the device, A69 (12:48–49)—a way of saying "speak in a language that you know the device understands."

Dressing up an abstract idea (bookmarking across devices) with words that might scare some technophobes ("communications link," "device properties," "client device") but that are devoid of technological innovation amounts to no more than "a drafting effort designed to monopolize the [abstract idea] itself." *Mayo,* 132 S. Ct. at 1297. For the reasons given below, claim 1 of the '906 patent claims ineligible subject matter.

### 1.    Claim 1 of the '906 patent is directed to the abstract idea of bookmarking across devices.

The district court correctly held that claim 1 of the '906 patent is directed to the abstract idea of bookmarking across devices. A31:7–10.

The inventors acknowledged as much in an employee disclosure that their employer subsequently submitted to the patent office during prosecution. A6081 ("Our invention describes device and access independent media 'bookmark' capability, with appropriate presentation for the target device").

Quoting the title of the '906 patent, Rovi argues that claim 1 is not directed to bookmarking, or to bookmarking across devices, but is "expressly directed to a 'user controlled multi-device media-on-demand system.'" AOB 44 (quoting A57). But using more words to describe an abstract concept does not make it less abstract, so the title just confirms the district court's conclusion. A traditional bookmark in a physical book is "user controlled" and books are read "on demand." The '906 patent takes the familiar, conventional bookmark's concrete and tangible solution and renders it abstract by replacing the book with "media." And the title's use of the term "multi-device" shows that the patent is directed to bookmarking *across devices,* just as the district court held.

Rovi argues an idea cannot be abstract unless it also qualifies as a "mathematical formula" or a "fundamental economic practice." AOB 41.

But the abstract idea exclusion is not so limited; it reflects "the longstanding rule that '[a]n idea of itself is not patentable.'" *Alice,* 134 S. Ct. at 2355 (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)). This Court has held that "methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas," *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011), without regard to whether the work relates to a mathematical formula or economic practice. The Supreme Court has ruled that "the idea that if a pencil is inserted into a cavity in a piece of rubber smaller than itself the rubber will attach itself to the pencil" is an abstract idea ineligible for patent protection. *Rubber-Tip Pencil Co.*, 87 U.S. at 507. Of course, the idea of attaching an eraser to a pencil is neither a mathematical algorithm nor a fundamental economic practice. More recently, this Court has recognized other abstract ideas falling outside these categories. It has held that a patent directed to the "abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" claims ineligible subject matter. *Content Extraction,* 776 F.3d at 1347. Game rules, too, are abstract

ideas. *In re Smith,* No. 2015-1664, 2016 WL 909410, at *3 (Fed. Cir. Mar. 10, 2016) (holding that claims "describing a set of rules for a game" are drawn to an abstract idea). Rovi's restrictive reading of the abstract idea exclusion is contrary to this Court's precedents, and those of the Supreme Court.

Rovi further argues that claim 1 of the '906 patent provides a "technical solution" to the "proliferation of different and often incompatible devices and file formats for viewing media." AOB 41. But claim 1 lacks a solution; it recites only the problem to be solved ("delivering the media . . . in a format compatible with . . . said . . . device"), not a solution to this problem. A69 (12:47–50, 12:54–59).

This Court's decision in *Internet Patents* is instructive. The patent in that case claimed the use of "back" and "forward" functionality in a web browser without losing data in a dynamically generated web page. 790 F.3d at 1344. The key claim limitation required "maintaining said state upon the activation of another of said icons, wherein said maintaining allows use of said Back and Forward navigation functionalities without loss of said state." *Id.* (quoting claim language). This Court held that "the character of the claimed invention is an

abstract idea: the idea of retaining information in the navigation of online forms." *Id.* at 1348. Yet in the claim, "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation." *Id.* Because the claim language "describes the effect or result dissociated from any method" for accomplishing it, the claim is patent-ineligible subject matter. *Id.* As in *Internet Patents,* claim 1 of the '906 patent claims the effect or result—"delivering the media . . . in a format compatible with . . . said . . . device"—but not the method for accomplishing it. Indeed, unless the practitioner *already knows* how to solve the problem and deliver media in a compatible format, the claim is not even enabled. Rovi cannot claim that it disclosed a solution when it relies on the practitioner's prior knowledge.

Moreover, the inventors *conceded* that transcoding and identifying device capabilities—steps necessary to deliver media in a compatible format—were both conventional. A6089 ("Transcoding, or converting one format to another, to allow for different device capabilities, is a feature of many pervasive computing initiatives."; "Capability exchanges are known in the art. . . . An everyday example of capability exchange can be found when two modems exchange signals to find their

'common denominator', that is, a transmission speed both modems can support."). Instructing the practitioner to apply what he or she already knows how to do is not providing a solution.

Rovi also argues that claim 1 is not directed to an abstract idea because after pausing on one device, a user can resume on another device "with a potentially incompatible technological format," AOB 42, but claim 1 does not require two incompatible formats. Claim 1 requires that the media be delivered to the first and second devices in formats compatible with their respective identified properties, A69 (12:49, 12:58–59), but nowhere requires that these formats be different. Rovi claims that one device might require the QuickTime video format, and the other the MPEG video format, but cites only the *written description* rather than any limitation recited in claim 1 itself. AOB 42. Rovi requested no claim construction that would have required two different formats for claim 1—indeed, the only two claim terms from the '906 patent that the parties identified for construction were "client device" and "user." A3436–38. Both parties argued that those terms should be understood to have their plain and ordinary meaning, and thus the

district court declined to adopt any claim construction for those terms. *See* A3436–38; A41:2–6.[8]

Moreover, no particular "technological formats" are recited in claim 1, let alone any technological improvements to such formats. *See Alice,* 134 S. Ct. at 2359–60 (claimed method is not patent eligible where it did not "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field"); *see Versata Dev. Grp., Inc. v. SAP Am., Inc.,* 793 F.3d 1306, 1335 (Fed. Cir. 2015) (contrasting "improv[ing] . . .the performance of a computer" with uninventive use of a computer to improve the performance of a method), *petition for cert. filed* (U.S. Mar. 11, 2016) (No. 15-1145). Indeed, no *concrete* or *tangible* details whatsoever are disclosed about *how* one might deliver media in formats appropriate for each device—only the bare abstract idea that media *be* delivered in such formats.

Rovi next argues that "the 'bookmark' element is merely one piece in the middle of a multi-step technological method." AOB 45. But the

---

[8] Although Rovi proposed a particular gloss on what "plain and ordinary meaning" means for these two terms, nowhere did that gloss mention formats. *See* A3436–38.

other claim limitations just state that something is being bookmarked ("media") and describe in generic terms how it is being consumed (on "client device[s]" over "communication link[s]"). A69 (12:47–61). To the extent that these recitations limit the claims at all, they at most describe the technological environment. Yet in *Alice,* the Supreme Court held that limitations like these that specify the technological environment are not enough to establish patent eligibility at *step two* of the *Alice* framework. 134 S. Ct. at 2358 (citing *Bilski,* 561 U.S. at 610–11); *see also Diehr,* 450 U.S. at 191 (limiting an abstract idea "to a particular technological environment" does not make a claim patent eligible); *Content Extraction,* 776 F.3d at 1348 (holding that requiring a scanner is "insufficient to save a claim" because it merely limits "the abstract idea of recognizing and storing information" to a particular technological environment). Necessarily, then, limitations about the technological environment cannot establish patent eligibility at *step one* of the *Alice* framework, because otherwise the Supreme Court would have held that the claims in *Alice* were patentable subject matter at the threshold first step without ever reaching step two.

Rovi also claims that bookmarks aren't even necessary. AOB 45. But when it refers to an embodiment of its "invention" that supposedly does not require a bookmark, Rovi again cites the patent's written description, not a claim limitation. *Id.* (citing A69 (11:28–40)). Claim 1 of the '906 patent, in contrast, expressly requires a bookmark. A69 (12:52) ("recording a bookmark").

Rovi also tries to analogize to the process for curing rubber at issue in *Diehr*. AOB 45. But in *Alice,* the Supreme Court explained that Diehr's invention "used a 'thermocouple' to record constant temperature measurements" in a way that had eluded those in the field before. 134 S. Ct. at 2358. That allowed the computer to continuously update the remaining cure time—and thus the thermocouple's use was a concrete and tangible application of what otherwise would have been an abstract formula. *Id.* Claim 1 of the '906 patent offers nothing akin to Diehr's inventive use of a thermocouple, instead reciting nothing beyond the bare idea of delivering media in an appropriate format.

Claim 1 of the '906 patent is directed to the abstract idea of bookmarking across devices. It is not directed to a *concrete* or *tangible* application of that idea; instead, the claim is directed to a generically

40

described "media-on-demand" system that is defined only by the broad, functional limitations of the claims. A69 (12:45–61).

### 2. Claim 1 of the '906 patent lacks an inventive concept that transforms the abstract idea into patentable subject matter.

At step two of the *Alice* framework, the Court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements transform the nature of the claim into a patent-eligible application." 134 S. Ct. at 2355 (quoting *Mayo,* 132 S. Ct. at 1297). The limitations of claim 1 of the '906 patent, considered individually or as an ordered combination, are not inventive, and thus the district court correctly concluded that the claim is not patent eligible.

### a. The inventors conceded that the individual limitations were conventional.

In the employee disclosure submitted to their employer at the time of the alleged invention, the inventors conceded that each of the individual limitations of claim 1 of the '906 patent were conventional:

➢ *Streaming media on demand was conventional.* "[Video on demand] service systems [i.e. delivering media over communication links to devices] are marketed [at the time of the patent application] by

41

Seachange . . . and . . . trialed by various companies for several years."
A6088. And "[s]treaming audio and video" was "marketed by
RealNetworks for audio and video," and part of "IBM's Digital Library
. . . marketed as Video Charger." A6088–89.

➢    *Converting formats based on device capability was
conventional.*[9] "Transcoding, or converting one format to another, to
allow for different device capabilities, is a feature of many pervasive
computing initiatives. . . . Transcoders can be created for multiple
device types such as wireless phones, web screen phones, and television
set top box's [sic] . . . ." A6089.

➢    *Bookmarking in digital media was conventional.* "Tivo . . .
markets [at the time of application] a digital VCR which can contain
14 hours of recorded media . . . . Replay . . . also markets a digital, PC
based VCR, and Intel showed a similar function at the 1999 National
Association of Broadcaster's Convention . . . . These techniques allow

---

[9] Claim 1 does not require converting formats. *See* Part V.C.1, *supra.*
But even if it did, or to the extent that the claim method could use such
conversion, the inventors conceded transcoding was conventional.

the [digital media] to be restarted, that is, allow the viewing to be initiated, stopped, reinitiated and completed . . . ." *Id.*

➢   *Identifying device properties was conventional.* "Capability exchanges [i.e. means for identifying device properties] are known in the art," including as a "key portion" of "the IBM Intouch project for Intelligent Communications in the early 90's," and as seen in the "everyday example" in which "two modems exchange signals to find their 'common denominator,' that is, a transmission speed both modems can support." *Id.*

> ### b.   The ordered combination adds nothing to the individual limitations, and merely describes the abstract idea of bookmarking across devices.

The ordered combination adds nothing to the limitations considered individually. *See Versata,* 793 F.3d at 1334 (asking whether the ordered combination adds something that "is not already present when the steps are considered separately"). Where a claim fails to do "*significantly more* than simply describe th[e] abstract method," it is not patent eligible. *Ultramercial,* 772 F.3d at 715 (emphasis added). Here, the ordered combination is nothing more than the bare notion of bookmarking across devices. That abstract method requires devices

43

(generically recited as a "first device" and a "second device"), something to bookmark (generically recited as "media"), delivery of that something (generically recited as delivering the media in a format compatible with the device's properties) and, finally, a bookmark (generically recited as "a bookmark specifying a position in the media"). A69 (12:45–61). The ordered combination simply takes the necessary components of the abstract idea and recites them without elaboration.

Claim 1 does not solve a problem necessarily rooted in computer technology. *See DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1257–59 (Fed. Cir. 2014). Rovi's reliance on *DDR* fails for two reasons: (1) claim 1 does not solve the problem Rovi contends it does; and (2) the problem is not necessarily rooted in technology. *See* AOB 43. According to Rovi, claim 1 overcomes a problem specific to "media-capable devices." But claim 1 doesn't solve any problem—instead it simply recites the problem to be solved ("delivering the media . . . in a format compatible with . . . said . . . device"). A69 (12:47–50, 12:54–59). The reason it need not recite a solution is that—as the inventors themselves conceded—matching media to the format of a device was conventional. "There is no 'inventive concept' in [the] use of a generic . . . computer to

44

perform well-understood, routine, and conventional activities commonly used in industry." *Content Extraction,* 776 F.3d at 1348.

And delivering media in a format appropriate for the recipient is hardly limited to computers. For example, bilingual salespeople have long addressed customers in different languages based on what language each customer speaks. Conductors have long known how to change the octave of a piece of music so that it falls within the vocal range of their singers. The generic problem that the patent recites is a conventional one—for computer and humans—and its solution predates the patent.

Simply put, the limitations of claim 1 of the '906 patent are merely conventional steps that collectively describe the abstract idea of bookmarking across devices. No technological details are offered; no technological solution is recited. Nothing is present in the ordered combination that "is not already present when the steps are considered individually." *Versata,* 793 F.3d at 1334. Claim 1 of the '906 patent thus claims, as the district court found, ineligible subject matter under 35 U.S.C. § 101.

c.    The *Alice* two-step framework demonstrates the preemptive effect of the claimed method.

Rovi argues that claim 1 of the '906 patent does not preempt the "building blocks of human ingenuity." AOB 48 (quoting *Alice,* 134 S. Ct. 2354–55). But the two-step *Alice* test *is* the preemption test, and thus no further preemption analysis is required. *Ariosa Diagnostics, Inc. v. Sequenom, Inc.,* 788 F.3d 1371, 1379 (Fed. Cir. 2015), *petition for cert. filed* (U.S. Mar. 21, 2016) (No. 15-1182). Where the *Alice* two-step test renders a claim patent ineligible, as it does here, "preemption concerns are fully addressed and made moot." *Id.*

Moreover, Rovi's attempts to ignore the preemptive effects of claim 1 are nonsensical. *See* AOB 48 (arguing lack of preemption because claim 1 requires two devices, two communication links and two formats). Without two devices, there can't be bookmarking across *devices,* which is the abstract idea itself. Without two distinct communication links, the two devices would need to share a single link—which at a minimum would mean the claim would preempt all applications of the abstract idea where the devices are in different

locations. Without two distinct media formats,[10] application of the abstract idea is again highly limited. And without a bookmark, there is no way to *bookmark* across devices. In short, even if a separate preemption analysis were required—a conclusion foreclosed by *Ariosa,* 788 F.3d at 1379 —claim 1 of the '906 patent would still be patent ineligible.

### d.    The district court did not resolve any disputed questions of material fact.

The district court had no need to and did not resolve questions about the credibility of Dr. Shamos, Rovi's expert. "[M]atters of law for the court's determination [are] inappropriate subjects for expert testimony." *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir. 1992); *see also Rumsfeld v. United Techs. Corp.,* 315 F.3d 1361, 1369 (Fed. Cir. 2003). The district court was permitted to ignore testimony that was irrelevant, conclusory or inadmissible. Fed. R. Civ. P. 56(c)(4) (declarations in opposition to a motion for summary judgment must "set out facts that would be admissible in evidence");

---

[10] Again, nothing in claim 1 requires *distinct* media formats. *See* Part V.C.1, *supra.*

Fed. R. Evid. 702(b) (expert testimony must be "based on sufficient facts or data"). Rovi points to no expert testimony that is material to whether claim 1 of the '906 patent claims patent-ineligible subject matter.

Rovi argues that Dr. Shamos testifies that the '906 patent requires particular machines and specialized devices. AOB 50. But, as the district court found, that testimony is "wholly conclusory." A4201 (testimony); A35:25 (district court's conclusion). The district court noted that Dr. Shamos "invokes the words 'particular' and 'specialized' without explaining *how* the claimed method" is anything but conventional. A35:25–27. Nor does Dr. Shamos address the specification's admission that the invention can be carried out with "a general purpose computer system" with appropriate software. A69 (12:24–28). Moreover, the district court correctly concluded that the claimed machines are no more particular or specialized than those the Supreme Court characterized as a generic general-purpose computer in *Alice.* A31:27–33:4. Rovi identifies no testimony that rebuts the district court's conclusion.

Dr. Shamos's conclusory testimony is also belied by Rovi's own infringement contentions. Rovi accused "Netflix hardware," which it

broadly defined as a series of generic computer hardware components: "any processor, computer, server, server farm, cloud platform, or other equipment relating to the Netflix service (e.g., hardware controlled, used, or supplied by Netflix for accessing, providing, or interacting with or otherwise using the Netflix service)." A6027. And according to Rovi, Netflix infringes the '906 patent when its service is accessed with a customary web browser via the Netflix website. A6030. Rovi cannot manufacture a material dispute using conclusory testimony that contradicts its own infringement contentions.

Rovi also claims that Dr. Shamos testifies that the invention requires a "fundamental change to the data." A4203 (¶ 41). But the supposedly fundamental change is merely "creat[ing] a new database entry of numbers or characters to record the paused location in a media file." *Id.* That is no more transformational than the "step of recording the transaction event to the activity log" that this Court held added "nothing of practical significance to the underlying abstract idea" in *Ultramercial.* 772 F.3d at 712 (quoting claim language) & 715–16 (rejecting argument that the limitations transform the claim into patentable subject matter); *see also Alice*, 134 S. Ct. at 2359 (using a

computer to "create and maintain 'shadow' accounts" is conventional because it "amounts to electronic recordkeeping—one of the most basic functions of a computer"). The district court was not required to accept Dr. Shamos's conclusory characterization of this conventional step as a "fundamental change," because that characterization is a legal conclusion—and an incorrect one, as demonstrated by this Court's analysis in *Ultramercial*. The district court "fail[ed] to see how a bookmark can 'fundamentally alter' a file when it is replaced with a new bookmark whenever the user watches a part of the video." A34:18–20. The district court further noted that "the only actual change to the data is an update to a video's starting point to account for any viewing activity from a different device, and such a change is more of a 'manipulation' or 'reorganization' than a 'fundamental alteration.'" A34:20–23. Rovi does not mention these conclusions, let alone explain why they are wrong.

### e.     The claimed method does not improve an existing technology.

Rovi's final argument is that claim 1 of the '906 patent improved an existing technological process. According to Rovi, the '906 patent "enabl[es] the delivery of the same media in different formats to

different devices having different capabilities." AOB 52. But nowhere

does it point to anything in the claim language that offers any

*technological* improvement to accomplish this goal. And it cannot,

because the claim language is devoid of any technological

improvements.

The claim language recites no new technological process for

delivering media, for converting formats or for determining a device's

capabilities. Instead, the inventors rely solely on conventional means

for these steps. A6088–89. There is no technological improvement—only

a directive to the practitioner to take the abstract idea and apply it.

*Alice,* 134 S. Ct. at 2358; *Mayo,* 132 S. Ct. at 1294.

> **D.    Claim 13 of the '709 patent claims unpatentable
> subject matter because it is directed to an abstract
> idea, implemented only with conventional steps
> recited at a high level of generality.**

Claim 13 of the '709 patent is directed to the idea of generating

viewing recommendations. In light of the inherently abstract nature of

recommendations based on preferences, Rovi pivots to the physical,

arguing that claim 13 of the '709 patent is "directed to improving an

inherently concrete and physical instrumentality—a 'client-server

interactive television program guide.'" AOB 54 (citing A71). But the

"concrete and physical instrumentality" to which Rovi refers is a television or other display, or a set-top box. The purported improvement, however, does not relate to any physical component of that equipment.

Instead, claim 13 recites a method for generating viewing recommendations. Those viewing recommendations might then be displayed on a television,[11] but the claimed method is about manipulating intangible data, not physical elements of a concrete and physical instrumentality. The implementation of that abstract method merely applies conventional steps, such as considering what has been watched before, what the viewer prefers, and limiting recommendations to unviewed material. These steps are so conventional that the inventors felt no need to explain how they should be implemented. Claim 13 discloses no technological solution for selecting criteria meeting a user's preferences. It recites no technological solution to the vexing problem of how best to use a set of criteria to generate

_____

[11] Nothing in claim 13 actually *requires* that the recommendations be displayed anywhere; the claim states only that they must be "provid[ed]" to user. A124 (26:29).

recommendations. It instructs the practitioner *what* problem to solve (generating viewing recommendations based on a viewing history and a preference profile), but not *how* that problem should be solved.

Perhaps nothing illustrates the breadth of Rovi's overreach better than its assertion that the invention of the '709 patent "is a cornerstone of defendant Netflix's success." AOB 36–37. In Rovi's view, having disclosed the abstract idea of generating viewing recommendations, and the conventional steps of using a viewing history and a preference profile, it now can claim credit for Netflix's cutting-edge recommendation and discovery technology. But the precedents of the Supreme Court and this Court hold otherwise. For the reasons given below, claim 13 of the '709 patent claims ineligible subject matter.

### 1.    Claim 13 of the '709 patent is directed to the abstract idea of generating viewing recommendations.

The district court correctly held that claim 13 of the '709 patent is directed to the abstract idea of generating viewing recommendations. A28:1–2. The claimed method recommends programs that the user has not yet watched using a history of what has been previously viewed, and criteria that describe what the viewer likes. A124 (26:16–29).

Rovi cites *Intellectual Ventures I LLC v. Mfrs. & Traders Trust Co.,* 76 F. Supp. 3d 536, 547 (D. Del. 2014), as persuasive authority in support of its argument that claim 13 of the '709 patent is valid under 35 U.S.C. § 101. *See* AOB 61–62. The Delaware district court held that U.S. Patent No. 7,603,382 (the "'382 patent") "passes muster under the *Alice* framework and recites patentable subject matter." 76 F. Supp. 3d at 548–49. But in an appeal from a different district court decision that addressed the same patent, this Court—months before Rovi filed its brief—reached the opposite conclusion. *Intellectual Ventures I LLC v. Capital One Bank (USA),* 792 F.3d 1363, 1371 (Fed. Cir. 2015) ("The asserted claims of the '382 patent claim an abstract idea and do not otherwise claim an inventive concept.").

And, indeed, this Court's decision in that appeal controls here. The Court held that the '382 patent's system that "presents . . . web pages tailored to an individual user" was an ineligible abstraction. *Id.* at 1369–70. Just like the claims at issue here, the claim recited a limitation devoted to tracking user history—in that case browsing history. The Court held that "customizing information based on

(1) information known about the user and (2) navigation data" is an abstract idea. *Id.*

The '709 patent is indistinguishable from the patent this Court found patent-ineligible in *Intellectual Ventures*. Just like that patent, claim 13 of the '709 patent tailors content based on data it has collected about the user's history. Just like that patent, claim 13 of the '709 patent does not describe how this customization should take place, except that it be accomplished by consulting a "user preference profile." Claim 13 merely computerizes what people have long done when settling in after a tiring day of work with nothing more than their own memories and paper copies of program listings: choose a particular comedy the user hasn't seen before to watch that night because the person likes comedies. *See* A3388 (1996 printed *TV Guide* grid). Thus, claim 13 is directed to a patent-ineligible abstract idea. *See Intellectual Ventures*, 792 F.3d at 1370–71 (citing *Alice,* 134 S. Ct. at 2359; *Parker v. Flook,* 437 U.S. 584, 593 (1978)).

Rovi offers little response to this straightforward *Alice*-step-one analysis, except to argue that the '709 patent requires "an inherently concrete and physical instrumentality—a 'client-server interactive

television program guide.'"[12] AOB 54. But reciting conventional physical elements[13] does not transform an abstract idea into a patent-eligible claim. *See In re Smith,* 2016 WL 909410, at *3 (reciting a physical deck of cards does not render a claim patent eligible, because shuffling and dealing a standard deck of cards is conventional); *Content Extraction,* 776 F.3d at 1347 (notwithstanding requirement of a scanner, claim is drawn to the abstract idea of "data recognition and storage"). As the district court noted, Rovi never explains how or why the recited client-server program guide makes claim 13 patentable subject matter:

> Rovi offers the conclusory assertion that the program guide server/client are "unique and particular," without explaining how a "program guide server/client" system is any different from a generic server/client system that happens to be used for displaying program guides. A generic system component does not become any less generic through the addition of a functional description. As an example, if the claims in *Alice* had referred to a "settlement risk-mitigating computer," rather than just a generic computer, it would not make the computer any more "unique" or "particular."

---

[12] The term Rovi quotes appears only in the preamble of claim 13.

[13] A112 (1:32–33).

A24:25–25:3.[14] The recited "client-server interactive television program guide" is a generic computer (a "client-server" computing system) that is being used for a particular purpose (an "interactive television program guide"). *See* A114 (6:4–5) ("Program guide server 25 may be based on any suitable combination of server software and hardware"); A115 (7:35–36) ("A program guide client application may run on personal computer 23."); A114 (6:59–62) (the program guide client can exchange data with the program guide server "using any suitable client-server based approach"). The "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," and limiting an abstract idea "to a particular technological environment" (for example, to an interactive television program guide) does not make a claim patent eligible. *Alice,* 134 S. Ct. at 2358.

---

[14] The district court similarly rejected the ITC's conclusion that the '709 patent is not directed to an abstract idea, noting that "the decision contains no analysis that the court finds persuasive, and instead just contains a rote recitation that the patents cover more than just abstract ideas." A24:16–17. The district court also noted that the ITC decision predated *Alice.* A24:15.

### 2. Claim 13 of the '709 patent lacks an inventive concept that transforms the abstract idea into patentable subject matter.

Neither the individual claim limitations nor their ordered combination recites an inventive concept that transforms the abstract idea of generating viewing recommendations into patentable subject matter.

### a. The individual limitations are conventional.

Rovi argues that claim 13 has "specific elements," such as a "viewing history database" and "user preference profile" AOB 57. It is settled law that a database and a user preference profile are generic computer components. *See Intellectual Ventures,* 792 F.3d at 1368 ("[A] database, a user profile . . . , and a communication medium, are all generic computer elements." (citation omitted)). The specification states that user data (including "user preference profiles . . . [and] viewing histories") can be stored "in any suitable format (e.g., a Structured Query Language (SQL) database)." A114 (6:21–27). These elements recite nothing more than a conventional computer implementation of a user's viewing history, and thus for purposes of step two of the *Alice* analysis are no different from a parent knowing what books a child has

read, or a librarian being able to recommend choices based on a borrowing history. As the district court held, "[a] 'database' is no different from a generic computer, and . . . the addition of functional descriptors does not turn a generic database into something more particular." A28:5–7.[15]

Rovi, in an attempt to avoid the functional and generic nature of its claimed "user preference profile," relies on details that appear only in the written description rather than the claim itself. *See* AOB 57.[16] But the district court adopted Rovi's proposed construction of "user preference profile": "criteria relating to user interest or disinterest in programs and/or program attributes," A48:19–20; A55:28–56:1,[17] which

---

[15] The district court also noted that the ITC's analysis of 35 U.S.C. § 101 was of limited persuasive value because it preceded the Supreme Court's decision in *Alice*. A28:7–9.

[16] Rovi cites "Appx124 (14:18–16:67)," but A124 contains only columns 23 and 24 of the '709 patent. The intended citation apparently is A118–19 (14:18–16:67), which discusses a particular embodiment of the claimed invention.

[17] Had the district court adopted Netflix's proposed construction ("set of user-defined preferences for program criteria," A48:20–21), the result in this appeal would be no different.

is no different from information parents and librarians have long used to make recommendations.

The other limitations Rovi discusses—a "program listing database" from which a "set of programs" that the user has "not yet watched" can be determined, AOB 57—are, again, generic and conventional limitations for generating recommendations. *See, e.g.,* A114 (6:25–27) ("Program guide data . . . may be stored . . . in any suitable format (e.g., a Structured Query Language database).").

Moreover, although Rovi argues that claim 13 is "directed to improving an inherently concrete and physical instrumentality," AOB 54, it does not argue that the limitations require unconventional hardware. And, indeed, its own infringement contentions accuse "any processor, computer, server, server farm, cloud platform, or other equipment relating to the Netflix service (e.g., hardware controlled, used, or supplied by Netflix for accessing, providing, or interacting with or otherwise using the Netflix service)." A6027 (defining "Netflix Hardware"); A6033:6–7 (accusing "Netflix Hardware"). Rovi cannot argue it claims unconventional functionality when the written

60

description calls for conventional techniques and Rovi accuses of infringement conventional computers.

> **b.    Dr. Shamos's testimony is irrelevant, and thus does not create a dispute of material fact.**

The testimony of Rovi's expert Dr. Shamos creates no dispute of material fact. Dr. Shamos's testimony is legally irrelevant because it is based on both an incorrect legal premise and limitations that do not appear in claim 13 of the '709 patent.

Dr. Shamos's testimony is based on the incorrect legal premise that if information is displayed on a tangible object such as a television, that means that the information itself is a material object. That premise is, however, precisely backward. To begin, information alone is not a tangible or physical thing, and reciting such information in a method claim does not transform an abstract idea into a patent-eligible invention. *See Digitech,* 758 F.3d at 1349, 1351. But where information represents a physical object—such as "the structure of bones, organs, and other body tissues"—a method that transforms that information might be patent eligible. *See In re Bilski,* 545 F.3d 943, 962–63 (Fed. Cir. 2008) (citing *In re Abele,* 684 F.2d 902, 908–09 (C.C.P.A. 1982)),

*aff'd sub nom. Bilski v. Kappos,* 130 S. Ct. 3218 (2010). This principle recognizes that when information represents a physical object, transforming the information can sometimes be akin to transforming a physical object.

But Dr. Shamos does not testify that the information recited in claim 13 represents physical objects, and that the information is transformed by the claimed method. Instead, he testifies that a "user preference profile" is a material object because, according to him, the profile elements include "tangible and interactive aspects" that the user can manipulate on screen. *See* A4224–25 (¶¶ 120–21). But displaying such preferences on a screen cannot change that a user's preferences are mental beliefs, not physical objects. Even if a user's preferences are manipulated by the claimed method, that is nothing like transforming a physical object. Displaying a symbolic representation of those preferences on a television screen is not at all like manipulating data that represents a person's bones. Dr. Shamos's testimony about the "user preference profile" is thus irrelevant.

Dr. Shamos's testimony about the "personal viewing recommendation" is likewise merely about intangible information that

that can be displayed symbolically on a screen. *See* A4224–26.[18] Dr. Shamos's testimony about the "personal viewing recommendation" is again irrelevant.

Moreover, Dr. Shamos testifies about the "user preference profile" as it is described in one embodiment in the written description. But the *claim language* does not require that the user preference profile ever be displayed, or that the user be able to manipulate it on screen. *See Mortg. Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) (expert testimony about a limitation not found in the claims does not create a disputed issue of material fact). The district court's construction for "user preference profile"—adopting Rovi's proposed construction and thus unchallenged by Rovi on appeal—is simply "criteria relating to user interest or disinterest in programs and/or program attributes," A55:28–56:1, without regard to how that criteria information is collected or manipulated by the user.[19] When Rovi cites Dr. Shamos's testimony about the "personal viewing

---

[18] Rovi cites three pages from Dr. Shamos's declaration, but only one page, A4226, is about personal viewing recommendations.

[19] Indeed, as the district court noted, claim 13 does not even require television equipment. A28:3–5.

recommendation," it once again cites testimony about embodiments in the written description, not claim language. AOB 58 (citing A4224–26). Rovi further cites Dr. Shamos's testimony about the "viewing history database," but the quoted testimony again cites the '709 patent's written description, not the claim language. AOB 58 (citing A4227 and A121 (20:26–31) (disclosing that a program guide server "may"—not *must*—"construct relational database expressions")). Nothing in the claim language requires a "relational" database, or database expressions of the sort discussed in the specification. Rovi never proposed a claim construction that required a relational database or database expressions—its only proposed construction for the '709 patent that even mentions a database simply repeats the word—without the "relational" modifier or any mention of "expressions"—in the proposed construction. A3429:24–30:9. The district court's claim construction order likewise does not import the limitations Dr. Shamos quotes from the written description. *See* A41:2–6.

Because all of Dr. Shamos's testimony about the '709 patent that Rovi cites is about embodiments in the written description rather than limitations recited in the claim, it is irrelevant. It is further irrelevant

because it relates to whether information is displayed on a television, not whether the claimed method transforms information that represents a physical object. Because Dr. Shamos's testimony is irrelevant, it does not create a dispute of material fact.

### c.   The ordered combination of the limitations does not recite an inventive concept.

Rovi argues that the ordered combination of limitations in claim 13 is inventive, because that combination purportedly was *novel*. AOB 59–60. "The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." *Diehr*, 450 U.S. at 188–89. As the district court rightly noted, the Supreme Court in *Diehr* held that "'[t]he question therefore of whether a particular invention is novel is wholly apart from whether the invention falls into a category of statutory subject matter.'" A13:15–17 (quoting *Diehr,* 450 U.S. at 190). And the Supreme Court in *Mayo* reaffirmed the principle that a novelty analysis cannot substitute for a § 101 analysis. 132 S. Ct. at 1304. Beyond the irrelevant question of novelty, Rovi offers no "ordered combination" argument for the '709

patent. *SmithKline,* 439 F.3d at 1319 ("arguments not raised in the opening brief are waived").

Rovi does dispute one aspect of the district court's reasoning, arguing that because the district court accepted without deciding that claim 13 might be novel, it was error to conclude that the ordered combination of limitations was routine and conventional. AOB 59. But Rovi's attack on a summation sentence ignores the district court's principal analysis, which was that claim 13 does not actually disclose a solution at all:

> In contrast to *Intellectual Ventures* [*v. Traders Trust,* 76 F. Supp. 3d 536 (D. Del. 2014)], the '709 patent in this case does not disclose a "specific method" of generating viewing recommendations, as the claims seek to capture virtually all methods of generating recommendations. Neither the claims themselves nor Rovi's brief contain any meaningful disclosure of how the recommendations are generated— based on what programs viewers with similar preferences have liked, or based on the content providers' own determination of what programs are similar, etc. In short, unlike *Intellectual Ventures,*[20] and unlike *Caltech* [*v. Hughes Communications,* 59 F. Supp. 3d 974 (C.D. Cal. 2014)], these

---

[20] As already noted, *see* Part V.D.1, *supra,* the Delaware district court decision is no longer good law in light of this Court's subsequent decision, in an appeal of the judgment of a different district court, holding that Intellectual Venture's '382 patent is invalid under 35 U.S.C. § 101. *Intellectual Ventures,* 792 F.3d at 1371.

claims do seek to preempt all applications of the abstract
idea.

A29:5–12. Nowhere does Rovi point to anything in the claim language
that recites a specific method for generating recommendations, beyond
the conventional steps of using a user's viewing history and preferences.
Claim 13 merely instructs the practitioner to take generic "criteria" for
programs previously viewed that meet a generic "preference profile" and
to "apply[] the criteria" to make recommendations. As the Supreme
Court held in *Alice,* tacking "conventional steps, specified at a high level
of generality" onto an abstract idea (such as generating viewing
recommendations) does not make a claim patent eligible. 134 S. Ct. at
2357.

### d.    The claimed method does not recite an improvement to a technological process.

Rovi argues that "[t]he '709 patent takes an existing technology—
interactive program guides—and makes it better." AOB 60. In
particular, Rovi contends that its patent addresses the difficulty of
finding programs "[a]s the quantity of available media content has
exploded." AOB 54. If Rovi is arguing that, assuming a large enough
selection of programs, a server could identify movies not-yet-watched

that the user prefers more quickly than a human, this Court has already held that "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir.), *cert. denied,* 136 S. Ct. 701 (2015).

Further, Rovi's analysis is untethered from the Supreme Court's *Alice* decision, which recognizes that claims might be patent eligible if they "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." 134 S. Ct. at 2359–60. Nothing in claim 13 improves the functioning of the computer, or effects any other technological improvement. It is not enough to recite an abstract idea and to take credit when a practitioner, applying conventional techniques, implements the unspoken details. *Id.* at 2358; *Mayo,* 132 S. Ct. at 1294.

## VI.    Conclusion

Rovi's brief is smoke and mirrors. It repeatedly declares the patent claims at issue are "technological" but points to no disclosure of improved technology, instead relying on uninventive recitations of generic computer hardware. It asserts over and again that the patent

claims disclose "solutions" when the claim language instead discloses only the problem to be solved, relying on the practitioner's knowledge of conventional techniques to implement a solution. The claims at issue are directed to mere abstractions, supplemented only by generic, routine and conventional steps, and thus are not patent eligible.

The Court should affirm.

Respectfully submitted,

DATED: March 28, 2016          By: s/Michael S. Kwun
                                              ASHOK RAMANI
                                              MICHAEL S. KWUN
                                              SHARIF E. JACOB
                                              EDWARD A. BAYLEY
                                              KEKER & VAN NEST LLP
                                              633 Battery Street
                                              San Francisco, CA 94111-1809
                                              Telephone: 415 391-5400
                                              Facsimile: 415 397-7188

                                              *Attorneys for Appellee,*
                                              *Netflix, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system:

Roderick George Dorman
Lawrence Milton Hadley
McKool Smith Hennigan, P.C.
300 South Grand Avenue
Suite 2900
Los Angeles, California 90017
rdorman@mckoolsmithhennigan.com
lhadley@mckoolsmithhennigan.com

Joel Lance Thollander
McKool Smith Hennigan, P.C.
300 West 6th Street
Suite 1700
Austin, Texas 78701
jthollander@mckoolsmith.com

Jeffrey A. Lamken
Michael Gregory Pattillo, Jr.
MoloLamken LLP
600 New Hampshire Avenue, NW
Washington, D.C. 20037
jlamken@mololamken.com
mpattillo@mololamken.com

John M. Whealan
Attorney at Law
4613 Merivale Road
Chevy Chase, Maryland 20815
jwhealan@law.gwu.edu

*Counsel for Appellants,*
*Rovi Corporation, Rovi Technologies Corporation,*
*Rovi Guides, Inc., United Video Properties, Inc.,*
*Aptiv Digital, Inc., and Starsight Telecast, Inc.*


Charles R. Macedo
Sandra A. Hudak
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, New York 10016
cmacedo@arelaw.com
shudak@arelaw.com

*Counsel for Amici Curiae,*
*Broadband ITV, Inc., Double Rock Corporation,*
*Island Intellectual Property, LLC,*
*Access Control Advantage, Inc.,*
*and Fairway Financial U.S., Inc.*


s/ Stephen Moore
Senior Appellate Paralegal
COUNSEL PRESS, INC.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 13,426 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook.

DATED: March 28, 2016          By: s/Michael S. Kwun
                                    MICHAEL S. KWUN